Filed 11/12/15; pub. order 12/4/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEXINGTON NATIONAL INSURANCE CORPORATION,<br><br>    Defendant and Appellant. | H039149<br>(Monterey County<br>Super. Ct. No. SS111843) |

## I.    INTRODUCTION

This is an appeal by Lexington National Insurance Corporation (Lexington), the surety on a $20,000 bail bond that was ordered forfeited when Edelmiro Martin Cisneros failed to appear at a hearing in his criminal case. Lexington contends that the $20,000 bond was rendered void when, at the end of Cisneros's preliminary hearing, the trial court increased Cisneros's bail to $100,000 but permitted Cisneros to remain out of custody. We agree, and we will therefore reverse the trial court's order denying Lexington's motion to vacate forfeiture and exonerate bail.

## II.    BACKGROUND

On October 8, 2011, Cisneros obtained a $20,000 bail bond from Lexington. The bond stated that Cisneros had been charged with infliction of corporal injury on a spouse

or cohabitant (Pen. Code, § 273.5, subd. (a)),[1] assault with a deadly weapon or by means of force likely to produce great bodily injury (former § 245, subd. (a)(1)), and criminal threats (§ 422). The bail bond further indicated that Cisneros had been ordered to appear in court on October 11, 2011.

Cisneros's preliminary hearing was held on October 13, 2011. Cisneros appeared in court on that date, out of custody on the $20,000 bail bond. No representative from the surety was present.

At the preliminary hearing, Salinas Police Officer Christopher Balaro testified about the factual basis for the charges: a September 25, 2011 incident reported to him by Jane Doe, the girlfriend of Cisneros. Doe had informed the officer that defendant had also committed prior domestic violence, which she had not reported. Salinas Police Officer Jacqueline Bohn testified about the injuries she observed on Doe after the September 25, 2011 incident.

The trial court held Cisneros to answer on the three charges listed in the bail bond. The prosecutor then asked the trial court to set bail at $100,000, noting that Cisneros had posted a $20,000 bail bond although an "escalation of bail" had previously been requested. (See § 1269c [authorizing peace officer to request a magistrate or commissioner issue an order setting a higher bail].)

Cisneros's trial attorney acknowledged that Officer Balaro had requested a higher bail, but she noted that bail had nonetheless been set at $20,000 at the September 29, 2011 arraignment. Cisneros's trial attorney argued that there had been "no changes in circumstances" justifying an increase in bail.

In response, the prosecutor informed the court that Cisneros's criminal history included prior domestic violence cases involving at least two different victims in 1997, 2002, and 2003.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

The trial court increased Cisneros's bail to $100,000, based on "the evidence in this case" and the "information about [Cisneros's] history." The trial court stated that it was giving Cisneros until 8:30 a.m. on October 18, 2011 to "return to court for posting of that bail at that time."

Cisneros's trial attorney asked the trial court to clarify whether it was requesting Cisneros post "an additional $80,000." The trial court responded that Cisneros would need to post "the total of $100,000" because "[t]he Court does not allow the bail bonds to be stacked." The trial court set the matter on calendar for 8:30 a.m. on October 18, 2011.

Cisneros failed to appear at the hearing held on October 18, 2011. The trial court ordered the $20,000 bail forfeited and issued a $100,000 bench warrant.

Lexington subsequently filed a motion to vacate the bail forfeiture and exonerate bail. Lexington argued that the trial court lost jurisdiction over the $20,000 bond when it released Cisneros after increasing the bail to $100,000. County Counsel filed written opposition to the motion, arguing that the $20,000 bond was valid and that Cisneros had failed to appear.

At a hearing held on December 6, 2012, the trial court denied Lexington's motion to vacate the bail forfeiture and exonerate bail. The trial court found that "the process that was followed was appropriate, and there was a bail bond still in place."

### III.   DISCUSSION

"Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review." (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592 (*International Fidelity*).)

3

In this case, Lexington does not argue that the trial court abused its discretion by increasing Cisneros's bail to $100,000 following the preliminary hearing.  Lexington argues that, as a matter of law, the bail increase changed the terms of the $20,000 bail bond and thereby rendered it void.  Lexington contends that upon ordering bail increased, the trial court was required to remand Cisneros into custody and exonerate the $20,000 bail bond.  These issues are matters of statutory construction and contract interpretation that are subject to this court's independent review.  (See *International Fidelity, supra,* 204 Cal.App.4th at p. 592.)  In conducting that review, we keep in mind the general rule that "the statutes governing bail are strictly construed to avoid forfeiture."  (*People v. Accredited Surety Casualty Co.* (2014) 230 Cal.App.4th 548, 556.)

Before a criminal defendant appears in court, his or her bail "shall be in the amount fixed in the warrant of arrest or, if no warrant of arrest has been issued, the amount of bail shall be pursuant to the uniform countywide schedule of bail . . . ." (§ 1269b, subd. (b).)  "If a defendant has appeared before a judge of the court on the charge contained in the complaint, indictment, or information, the bail shall be in the amount fixed by the judge at the time of the appearance." (*Ibid.*)

An arrestee's bail may be increased upon application of a peace officer who has "reasonable cause to believe that the amount of bail set forth in the schedule of bail for that offense is insufficient to ensure the defendant's appearance or to ensure the protection of a victim, or family member of a victim, of domestic violence." (§ 1269c.) An order increasing the bail amount may be issued by the magistrate or commissioner to whom the application is made.  (*Ibid.*)  However, "[i]f, after the application is made, no order changing the amount of bail is issued within eight hours after booking, the defendant shall be entitled to be released on posting the amount of bail set forth in the applicable bail schedule." (*Ibid*.)  A criminal defendant's bail may also be set by the magistrate at the preliminary hearing, after the defendant has been held to answer. (§ 1277.)  Bail may be increased when a defendant is arraigned on an information or

4

indictment. (§ 985.) If the defendant is present when the order increasing bail is made, he or she "must be forthwith committed." (§ 986.)

The factors to be considered in setting bail are set forth in section 1275, subdivision (a)(1): "In setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case. The public safety shall be the primary consideration." Bail increases under section 1289, which applies after an information or indictment is filed, require a showing of good cause.

The parties have not directed us to any statutory authority permitting a court to increase a defendant's bail while simultaneously permitting the defendant to remain out of custody on a prior bail bond. By finding that an immediate increase in bail is warranted, a trial court is necessarily finding that the original bond is insufficient to guarantee the defendant's appearance and ensure public safety. (See § 1275; *McDermott v. Superior Court* (1972) 6 Cal.3d 693, 695.) As explained below, under the circumstances here, the trial court's order allowing Cisneros to remain out of custody on the original bail bond violated the terms of the $20,000 bond, rendering it void.

"A bail bond is in the nature of a contract between the government and the surety, in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond. [Citations.] 'In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond.' [Citation.]" (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356.)

"The contractual nature of the relationship between the government and the surety leads to the conclusion that the bail order is the offer, and the posting of a bond is the

acceptance of that offer." (*International Fidelity, supra,* 204 Cal.App.4th at p. 595.)  A bail bond was found to be void based on contract principles in *International Fidelity*.  In that case, a surety posted a $35,000 bond for the release of the criminal defendant.  (*Id.* at p. 590.)  At a subsequent hearing, the prosecutor informed the trial court that the defendant had outstanding warrants in four other cases.  (*Ibid.*)  The trial court increased bail to $100,000 and remanded the defendant into custody, but it allowed the $35,000 bond "to remain" and ordered an additional $65,000.  (*Ibid.*)  A second surety then posted a $65,000 bond on the defendant's behalf.  (*Id.* at p. 591.)  When the defendant failed to appear at the next hearing, the trial court ordered both bonds forfeited.  (*Id.* at p. 591.)  The trial court later vacated the forfeiture of the original $35,000 bond, finding that it had been exonerated as a matter of law when the defendant was remanded into custody.  (*Ibid.*)

On appeal, the issue in *International Fidelity* was whether the $65,000 bond's forfeiture should also have been vacated.  The appellate court held that because the original $35,000 bond had been exonerated as a matter of law, it was "legally impossible" for the $65,000 bond to supply the ordered bail amount of $100,000.  (*International Fidelity, supra,* 204 Cal.App.4th at p. 594.)  The court further held that the $65,000 bond should not have been forfeited because it was void under contract law.  The trial court had offered bail in exchange for the $65,000 bond based on "two items of consideration": the defendant's release from custody and the extension of the original $35,000 bond.  (*Id.* at p. 595.)  Because the original $35,000 bond had been exonerated as a matter of law, the surety did not receive the benefit of the bargain.  In other words, part of the consideration was unlawful, which rendered the contract void.  (*Ibid.*)

In the instant case, it was similarly "legally impossible" for the original $20,000 bond to supply the increased bail amount of $100,000.  (*International Fidelity, supra,* 204 Cal.App.4th at p. 594.)  Once the trial court determined that a $20,000 bond was insufficient and that a $100,000 bond was required in order for Cisneros to remain out

of custody, the original terms of the contract between the government and the surety no longer applied.

County Counsel points out that in this case, unlike in *International Fidelity,* Cisneros was never remanded into custody. County Counsel argues that therefore, the $20,000 bond was not exonerated as a matter of law. However, as previously explained, the trial court's order increasing Cisneros's bail to $100,000 made it "legally impossible" for the surety's $20,000 bond to supply the required bail amount. (*International Fidelity, supra,* 204 Cal.App.4th at p. 594.)

The instant case is distinguishable from *People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1 (*Bankers*), relied upon by County Counsel, in which the criminal defendant's bail was never actually increased. In *Bankers*, the criminal defendant was released from custody on a $17,500 bond posted by the surety. (*Id.* at p. 3.) The bond stated that the defendant had been ordered to appear on two narcotics charges, but it also provided that the surety was undertaking to guarantee the defendant's appearance " 'to answer any charge in any accusatory pleading based upon the acts supporting the complaint filed against him/her and all duly authorized amendments thereof . . . .' " (*Id.* at pp. 3-4.) The complaint ultimately filed in the case included charges that warranted bail of $115,000 pursuant to the bail schedule. (*Id.* at p. 4.) The defendant appeared for two hearings but then failed to appear, and bail was forfeited. The surety challenged the forfeiture, arguing that the jail had mistakenly set bail too low. The trial court denied the surety's motion, and the appellate court affirmed. (*Ibid.*)

The *Bankers* court disagreed that the complaint had "changed the conditions of [the] bond" and "materially increased" the surety's risk. (*Bankers, supra,* 181 Cal.App.4th at pp. 5, 6.) The court noted that under the terms of the bond, the surety had not only undertaken to ensure the defendant's appearance on the charges listed in the bond, but on any charges based on the acts he had committed. (*Id.* at p. 6.) Further, although higher bail "might have been warranted," the trial court had never "actually

7

increased the bail." (*Id.* at p. 7.) Thus, the government had not unilaterally changed the terms of the contract. (*Id.* at p. 8.)

In contrast to *Bankers,* here the trial court *did* actually increase the amount of bail in this case, from $20,000 to $100,000. The increase in the amount of bail was a unilateral change of the terms of the original contract, thereby rendering the original contract—i.e., the $20,000 bond—void. (See *International Fidelity, supra,* 204 Cal.App.4th at p. 595.)

Our conclusion—that the increase in Cisneros' bail order at the preliminary hearing rendered the prior bail bond void—is consistent with language in *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939 (*Kiperman*). In *Kiperman*, the surety posted a $250,000 bail bond, but after new charges were filed against the defendant, the court increased the bail order to $1 million. (*Id.* at p. 936.) The defendant was remanded into custody, the $250,000 bond was exonerated, and the surety was ordered to return the defendant's premium. (*Ibid.*) On appeal, the *Kiperman* court agreed with the surety that the defendant was not entitled to a return of the premium, because the surety had not surrendered the defendant and it had "fully earned the premium" during the time the defendant had been free on the bond. (*Id.* at p. 939.) In discussing that issue, the *Kiperman* court noted that "[o]nce bail was raised to a figure greater than the amount posted, the trial court had no choice but to remand the defendant, because a person may not be released on bond for an amount less than the amount of the bail ordered by the court. [Citation.]" (*Ibid.*)

We acknowledge that language in *National Auto. Ins. Co. v. Superior Court* (1929) 96 Cal.App. 412 (*National*) is not consistent with our conclusion that the increase in Cisneros' bail at the preliminary hearing rendered the prior bail bond void. In *National*, the criminal defendant was originally released on a $2,500 bail bond, but at the preliminary hearing, the defendant sought and obtained a reduction of the bail to $1,500. (*Id.* at p. 413.) The trial court ordered the defendant to post a new bond for $1,500, but

the defendant absconded without doing so, and the court later ordered the original $2,500 bail bond forfeited. (*Ibid.*) The surety challenged the forfeiture on appeal, but the Court of Appeal rejected the challenge, holding that the trial court's order decreasing bail and requiring a new bond "did not purport to exonerate the bond previously given." (*Id.* at p. 415.) The court held that the $2,500 bond could have been exonerated "through the execution of a new bond in the sum of $1,500," but that until a $1,500 bond was posted, "the one first provided was in full force and effect." (*Ibid.*)

We note that *National* has never been cited by any published case. In addition, it involved a *decrease* in bail, not a bail increase, which reflects a finding that the surety's risk has materially increased. And, although *National* relied on a bail increase case, *People v. Newman* (N.Y. App. Div. 1905) 100 A.D. 436 (*Newman*), that case is not binding authority and is itself distinguishable. In *Newman*, the criminal defendant was released on a $1,000 undertaking. During the preliminary hearing, with both the surety and defendant present, the magistrate ordered the defendant to post a new undertaking of $1,500 but permitted him to leave the court without posting the new undertaking. (*Id.* at p. 438.) When the defendant did not return to court to resume the preliminary hearing, the $1,000 undertaking was ordered forfeited. (*Ibid.*) The surety challenged the forfeiture on the ground that "the action of the magistrate in ordering the defendant to furnish a new bond in a different and larger amount terminated the obligation of the surety upon the original undertaking." (*Ibid.*) The court rejected this argument. It held that "[t]he mere increase of the amount of bail" did not exonerate the prior bond. (*Id.* at p. 439.) However, *Newman* is distinguishable, because the surety was present when the bail amount was increased and nothing in the record indicated that "the adjournment was made without the consent of the defendant and the surety." (*Ibid.*)

In the instant case, following the preliminary hearing, the trial court ordered a bail increase *without* notice to the surety and without the surety's consent. The trial court then allowed Cisneros to remain free on the original bond, which it had deemed

9

insufficient. Under these circumstances, the trial court's failure to remand Cisneros into custody and exonerate the original bond necessarily voided that original bond. When the trial court increased Cisneros's bail to $100,000, it should have remanded Cisneros into custody, exonerated the $20,000 bail bond, and required Cisneros to post a new $100,000 bail bond before re-admitting him to bail. Because the trial court rendered the terms of the $20,000 bond void, it should have granted the surety's motion to exonerate the bond and vacate the bail forfeiture.

## IV.   DISPOSITION

The order denying the motion to exonerate the bond and vacate the bail forfeiture is reversed, and the trial court is directed to enter a new order granting that motion. Lexington National Insurance Corporation is entitled to recover its costs on appeal.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


I CONCUR:




_____
MIHARA, J.




*People v. Lexington National Ins.*
**H039149**

Grover, J., Concurring

      I concur in the judgment only, adding my view that a different factual setting could support the postponed effective date of a bail increase (for example, based on a foreseeable future event or anticipated change in circumstances).  However, I agree that the order here must be interpreted as having immediate effect, as I find no factual support in this record for the risk of flight or danger to public safety being somehow greater five days after the order increasing bail than on the day the order was made.

 

_____

Grover, J.

*People v. Lexington National Ins.*
H039149

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039149 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS111843) |
| v. | |
| LEXINGTON NATIONAL INSURANCE CORPORATION, | |
| Defendant and Appellant. | |

THE COURT:

The opinion in the above-entitled matter filed on November 12, 2015, was not certified for publication in the Official Reports. John Mark Rorabaugh, attorney for defendant and appellant, has requested the opinion be certified for publication. It appears that the opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

_____
MIHARA, J.

I would deny the request for publication.

_____
GROVER, J.

13