Filed 7/7/16  P. v. The North River Ins. Co. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>THE NORTH RIVER INSURANCE CO.,<br><br>Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS,<br><br>Real Party in Interest and Appellant. | B261456<br><br>(Los Angeles County<br>Super. Ct. No. SJ3928) |

APPEAL from an order the Superior Court of Los Angeles County, David R. Fields, Judge.  Affirmed.

Jefferson T. Stamp for Defendant, Appellants and Real Party in Interest.

Mary C. Wickham, County Counsel, Ruben Baeza, Jr., Assistant County Counsel, Joanne Nielson, Deputy County Counsel, Plaintiff and Respondent.

## INTRODUCTION

Appellant North River Insurance Company, acting through its agent Bad Boys Bail Bonds, posted a $50,000 bail bond on behalf of a criminal defendant who later failed to make a required appearance. The bond was forfeited pursuant to Penal Code[1] section 1305, and the trial court entered summary judgment against North River. North River moved to set aside the summary judgment on the basis that the trial court did not have jurisdiction to forfeit the bond. North River argues that the trial court's order that defendant abstain from possessing firearms or controlled substances materially increased North River's risk, and therefore voided the bond as a matter of law. We hold that the court had jurisdiction to forfeit the bond and enter summary judgment if defendant failed to appear, which is what occurred in this case. We therefore affirm the trial court's order denying North River's motion to set aside summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Marlon Recinos was arrested and charged with a violation of Health & Safety Code section 11370.1, subdivision (a), possession of a controlled substance while armed with a loaded, operable firearm. Appellant North River Insurance Company, acting through its agent Bad Boys Bail Bonds, posted a $50,000 bail bond. The bail bond ensured that defendant would appear as required in the superior court, and would "at all times hold him/herself amenable to the orders and process of the court." The power-of-attorney form with the bond stated that the authority of the attorney-in-fact acting on behalf of the corporation was "limited to appearance bonds and cannot be construed to guarantee defendant's future lawful conduct, adherence to travel limitation, fines, restitution, payments or penalties, or any other condition imposed by a court and not specifically related to court appearance."

At defendant's first court appearance, the judge said to defendant, "Bail has been posted in the amount of $50,000. That bond will stand. [¶] Sir, as a condition of your bail, you're ordered not to possess any dangerous or deadly weapons or ammunition, and

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

you're not to knowingly possess any controlled substance without a valid prescription. [¶] if you violate those orders, sir, that would be grounds to forfeit your bail and set a higher bail and place you in custody until posting a higher bail. [¶] Do you understand?" Defendant indicated that he did not understand, so the judge repeated the information: "Mr. Recinos, listen carefully. As a condition of bail, you cannot possess any dangerous or deadly weapons or any ammunition. You can also not possess any controlled substance without a valid prescription. If you do that, sir, your bail is going to be forfeited. You will lose it. You will then be placed in custody." The defendant said he understood.

Defendant appeared as required on March 27, April 15, May 10, and May 24, 2013. Defendant failed to appear at the pretrial conference on June 20, 2013, and the trial court held that his bond was forfeited. Notice of forfeiture was mailed to North River.

According to statute, "If the defendant appears either voluntarily or in custody after surrender or arrest in court within 180 days of the date of forfeiture or within 180 days of the date of mailing of the notice . . . the court shall . . . direct the order of forfeiture to be vacated and the bond exonerated." (§ 1305, subd. (c)(1).) North River moved to extend this 180-day deadline pursuant to section 1305.4, which allows an extension of time upon a showing of good cause. (§ 1305.4.) A North River investigator submitted a declaration stating that defendant may have returned to El Salvador. The court granted North River's motion.

North River then moved for a second extension of time. North River also filed a motion to vacate the forfeiture and exonerate the bond, arguing that defendant was not lawfully required to appear at the pretrial conference under the reasoning of a recent case, *People v. Safety National Casualty Insurance Co.* (2014) 225 Cal.App.4th 438 (revd. *sub nom. People v. Safety Nat. Cas. Corp.* (2016) 62 Cal.4th 703).[2] The trial court denied both motions.

---

[2] North River appealed this issue, but following the Supreme Court's opinion in *People v. Safety Nat. Cas. Corp.* (2016) 62 Cal.4th 703, 710 North River has conceded that this argument does not present a basis for reversal.

The superior court entered summary judgment against North River for $50,000 on the bail bond, plus $435 in court costs, and mailed notice to North River on April 28, 2014. North River did not appeal the judgment.

On September 18, 2014, North River filed a motion to set aside the summary judgment and vacate forfeiture of the bond. North River relied on Code of Civil Procedure section 473, subdivision (d), which allows a court to "set aside any void judgment or order." North River argued that the "summary judgment is void based on the lack of due process notice of the new conditions of bail that were imposed after the bond was already posted by the Surety and Bail Agent." Because the court had ordered defendant not to possess any firearms or controlled substances, North River reasoned that new conditions of bail unrelated to appearance were improperly imposed by the court. The County of Los Angeles opposed the motion. After several extensions and supplemental briefing, the court denied North River's motion. The court held that the court's order to defendant not to possess firearms or controlled substances did not nullify the bond contract: "[S]imply put, the defendant here did not show up to court, period, and, therefore, the bond is forfeited. . . . I find that the court can place reasonable conditions on the bail, find the surety did not have to be notified, and these are reasonable conditions. It did not change the consideration for the bail contract."

North River timely appealed from the order denying its motion to set aside the judgment.

## STANDARD OF REVIEW

"The statutory scheme governing bail forfeitures is found in Penal Code section 1305 et seq. These provisions must be carefully followed by the trial court, or its acts will be considered without or in excess of its jurisdiction." (*People v. Aegis Sec. Ins. Co.* (2005) 130 Cal.App.4th 1071, 1074, fn. omitted.) "Questions of statutory construction are reviewed de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432, [101 Cal.Rptr.2d 200, 11 P.3d 956].) In interpreting the bail forfeiture statutes, we keep in mind that the law traditionally disfavors forfeitures and, therefore, such

4

provisions are strictly construed in favor of the surety. [Citations.]" (*People v. United States Fire Insurance Company* (2015) 242 Cal.App.4th 991, 999.)

## DISCUSSION

"The basic scheme as to bail is almost absurdly simple. The defendant can post a sum of money with the court to be forfeited if he shall not make himself available at all proper times in connection with the legal process." (*People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51, 53-54.) When a defendant secures a bail bond, the "bail bond is a contract between the government and the surety. The state and the surety agree that if the state will release the defendant from custody, the surety will guarantee that the defendant will appear personally at a specified time and place. If the defendant fails to appear, the surety is liable to the state for the amount of the bond." (*People v. Accredited Surety and Casualty Co.* (2012) 209 Cal.App.4th 617, 621.)

Here, defendant was required to appear at the pretrial conference, he did not appear, and bail was forfeited as a result. Under these circumstances, the trial court was required to declare bail forfeited under section 1305, subdivision (a): "A court shall in open court declare forfeited the undertaking of bail or the money or property deposited as bail if, without sufficient excuse, a defendant fails to appear" as required.

North River argues that forfeiture was unauthorized because the court voided the bail contract when it ordered defendant to refrain from possessing firearms or controlled substances without a prescription. North River asserts, "Once the trial court issued the new bail order to insure compliance with non-appearance related conditions, the original appearance bond was rendered legally insufficient consideration and thus void. As a result, the trial court lost fundamental jurisdiction, the summary judgment is void and should, therefore, be reversed."

North River did not appeal the summary judgment. Its sole basis for appeal is that the judgment is void because the court lacked jurisdiction to enter it. If a bail statute requires the court to exercise its jurisdiction in a particular manner, follow a particular procedure, or perform subject to certain limitations, an act beyond those limits is in

excess of the court's jurisdiction. (*People v. American Contractors Indemnity Co.* (2015) 238 Cal.App.4th 1041, 1044.)

North River argues that the trial court's order materially increased the risk to North River, which the court was without jurisdiction to do. There is no question that a judge may "set bail on the terms and conditions that he or she, in his or her discretion, deems appropriate." (§ 1269c; see also *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 642 [there is "little dispute that a trial court may impose conditions associated with release on bail."].) "[B]ecause the trial court has the inherent power to impose bail conditions, it follows that the trial court may impose bail conditions intended to ensure public safety." (

*Gray v. Superior Court*, *supra*, 125 Cal.App.4th at p. 642; citing *In re McSherry* (2003) 112 Cal.App.4th 856, 861-863.) North River does not dispute that the court had the authority to set reasonable conditions for defendant's bail. The question, therefore, is whether the court voided the bail bond by doing so, thereby acting outside of its jurisdiction when it entered summary judgment against North River on the bail bond.

North River is correct that the trial court may not unilaterally increase the risk to a surety without notice. However, North River has not established that the trial court did so here. In its opening brief, North River relies on *Reese v. United States* (1869) 76 U.S. 13 (*Reese*). In that case, the bail sureties insured the defendant's presence in court. But because the defendant's fraud case involved multiple purported land grants from the Mexican government, the court and parties agreed that certain civil cases involving the grants should be decided before the criminal case against the defendant proceeded. If the defendant won the civil cases, the criminal charges would be dropped. (*Reese, supra*, 76 U.S. at p. 15.) The prosecution and defense therefore stipulated to the continuance, and "it was fully understood by all parties at the time that if the stipulation should be made, [defendant] and his witnesses would return to Mexico and remain there until the civil cases in the United States District Court were finally disposed of . . . ." (*Id*., at p. 16.) The Supreme Court held that the change in circumstances—that the defendant would not be immediately prosecuted, but instead wait for months or years while other cases were

6

litigated—was a material change that released the sureties from their original obligations: "The stipulation, made without their consent or knowledge, between the principal and the government, has changed the character of his obligation; it has released him from the obligation with which they covenanted he should comply, and substituted another in its place." (*Id*., p. 21.) The court concluded, "The government thus consented that [the defendant] might depart out of the territory of the United States to a foreign country, where it would be impossible for the bail to exercise their right to arrest and surrender him; and further, it consented that he might remain abroad for a period of indefinite duration. This was all done without the concurrence or even knowledge of the sureties, whose risks were thus greatly increased. [¶] It would be against all principle and all justice to allow the government to recover against the sureties for not producing their principal, when it had itself consented to his placing himself beyond their reach and control." (*Id*., at p. 22.)

This Court relied on *Reese* in *People v. Western Insurance Company* (2013) 213 Cal.App.4th 316 (*Western*) which North River also cites. In that case, while the defendant was released on bail, the trial court granted the defendant's request to attend his mother's funeral in the Philippines. No notice of the defendant's request or the court's order was provided to the surety. After the defendant failed to return from the Philippines and bail was forfeited, the surety moved to have the bail bond exonerated. This Court relied on *Reese* and similar cases involving court permission for a defendant on bail to leave the country, and found that the surety "met its burden of showing that the court order permitting [the defendant] to travel to the Philippines was made without its consent or knowledge, and materially increased its risks under the bail bond agreement. . . . The actions of the court thus breached the government's obligation not to materially increase the risk to the surety without notice." (*Id*. at pp. 323-324.) We held that the trial court erred by denying the surety's motion to exonerate the bail bond.

*Reese* and *Western* do not support North River's argument that the trial court voided the bail bond by ordering defendant not to possess firearms or controlled substances. Allowing a defendant to leave the country without notice to the surety places

7

significant risks on a surety relating to the defendant's future court appearances, and denies the surety the ability to mitigate those risks. As we noted in *Western*, the order allowing the defendant to travel to the Philippines "put [the defendant] out of reach of the surety and of domestic law enforcement agencies. It permitted him to disregard the court's directive to return, with little chance of apprehension. And significantly, it denied Western the opportunity to exercise its statutory right to surrender [the defendant] to the custody of the court, rather than incur the very real risk that he would not return and the bond would be forfeited." (*Western*, *supra*, 213 Cal.App.4th at p. 324.) Here, by contrast, North River has not pointed to any aspect of the court's ruling that may have increased the risk that defendant would fail to appear as required.

In its reply brief, North River relies on *People v. Lexington National Insurance Corporation* (2015) 242 Cal.App.4th 1098, 1101-1102 (*Lexington*), which was decided while this appeal was pending. In that case, bail was initially set at $20,000, and the defendant secured a bail bond. After the preliminary hearing, the trial court increased bail to $100,000, but released defendant without requiring him to post the higher bail. (*Id.*, at p. 1101.) When the defendant failed to appear at the next hearing, the court ordered the $20,000 bail forfeited. (*Id.*, at p. 1102.) The surety moved to exonerate the bond, arguing that "as a matter of law, the bail increase changed the terms of the $20,000 bail bond and thereby rendered it void." (*Ibid.*) The Court of Appeal agreed. "By finding that an immediate increase in bail is warranted, a trial court is necessarily finding that the original bond is insufficient to guarantee the defendant's appearance and ensure public safety. (See § 1275; *McDermott v. Superior Court* (1972) 6 Cal.3d 693, 695 [100 Cal.Rptr. 297, 493 P.2d 1161].)" (*Lexington*, *supra*, 242 Cal.App.4th at p. 1103.) Therefore, "[o]nce the trial court determined that a $20,000 bond was insufficient and that a $100,000 bond was required in order for [the defendant] to remain out of custody, the original terms of the contract between the government and the surety no longer applied." (*Id.*, at p. 1104.)

This case is not similar to *Lexington*, because the trial court here never found that increased bail was warranted to secure the defendant's appearance in court. The central

8

issue in *Reese*, *Western*, and *Lexington* is that the trial court's order affected the risk relating to the defendant's appearance in court. Indeed, "'[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citation.]" (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709.) Here, North River has not presented any evidence or argument suggesting that the central object of bail—defendant's continuing appearance—was undermined by the court's order.

Moreover, North River got exactly what it bargained for pursuant to the bail forfeiture statutes. North River guaranteed that defendant would appear at all required court hearings, and if he did not, bail would be forfeited. Defendant did not appear at a required court hearing, and as a result, bail was forfeited. Nothing in the record compels a finding that the court's order that defendant not possess firearms or controlled substances—which had no apparent effect on defendant's lack of appearance—increased North River's risk to the extent that the bail contract was void as a matter of law.

North River also argues that it had a due process right "to notice of the new obligations under the bond as well as the expanded grounds for forfeiture of the bond." In support, it cites *County of Madera v. Ranger Ins. Co.* (1991) 230 Cal.App.3d 271. In that case, a defendant failed to appear and his bail bond was forfeited; notice of the forfeiture was mailed to the surety. A week after his missed appearance, the defendant appeared in court. The court set the forfeiture aside and reinstated the bond, but it never provided notice to the surety. (*Id.*, at p. 273.) The defendant later failed to appear again, and the bond was forfeited again. (*Id.*, at p. 274.) The Court of Appeal held that "the surety has a due process right to notice before reinstatement and rerelease." (*Id.* at p. 277.) The case does not suggest that a surety has a due process right to be informed of bail conditions imposed upon defendants. "[C]ases are not authority for propositions not considered." (*People v. Brown* (2012) 54 Cal.4th 314, 330.)

In short, North River has not demonstrated that the summary judgment was void because the trial court lacked jurisdiction to enter it. The court therefore did not err by denying North River's motion to set aside the summary judgment.

**DISPOSITION**

The trial court's order is affirmed.  Respondent is entitled to its costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.

We concur:


EPSTEIN, P. J.


WILLHITE, J.