Filed 3/22/22  P. v. Financial Casualty & Surety CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FINANCIAL CASUALTY & SURETY, INC.,<br><br>    Defendant and Appellant. | D079467<br><br><br>(Santa Clara Super. Ct. No. B1581999) |

APPEAL from an order of the Superior Court of Santa Clara County, Vincent J. Chiarello, Judge.  Affirmed.

Law Office of John Rorabaugh, John Mark Rorabaugh and Crystal L. Rorabaugh for Defendant and Appellant.

James R. Williams, County Counsel, and Christopher Anthony Capozzi, Deputy County Counsel, for Plaintiff and Respondent.

Financial Casualty & Surety, Inc., acting through its agent Bail Hotline Bail Bonds (collectively Surety), posted a bond to secure the pretrial release of Christopher B. Trujeque, who failed to appear at a subsequent readiness hearing. The bond was forfeited, and the court entered summary judgment against Surety. On appeal, Surety asks us to set aside the summary judgment, vacate the forfeiture, and exonerate bail because the court used a constitutionally inadequate process to set Trujeque's bail, rendering the penalty clause of the bail contract void. Specifically, Surety relies on *In re Humphrey* (2018) 19 Cal.App.5th 1006 (*Humphrey I*) to allege it was constitutional error to set Trujeque's bail without considering his ability to pay or the availability of less restrictive alternatives to money bail.[1] But as multiple courts have held, any *Humphrey* error in setting bail does not affect the enforceability of the *bond*. Assuming the trial court violated Trujeque's constitutional rights in setting bail, that error does not render either the bond or the subsequent summary judgment entered on that bond void. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

After Trujeque's arrest in connection with a suspected robbery, Surety posted a $25,000 bond to secure his release. The bond required Trujeque to appear in court for his arraignment. When he did, he was charged with second-degree robbery with use of a handgun. (Pen. Code,[2] §§ 211, 212.5, subd. (c), 12022.53, subd. (b).) During that hearing, the district attorney requested the court to increase Trujeque's bail to match the bail schedule, suggesting the $25,000 amount appeared "willfully low." The court increased

[1]    *Humphrey I* was affirmed by the Supreme Court while this appeal was pending. (*In re Humphrey* (2021) 11 Cal.5th 135 (*Humphrey II*).)

[2]    Further undesignated statutory references are to the Penal Code.

2

bail to $125,000 based on the bail schedule, remanded Trujeque to custody, and exonerated the prior bond. In deciding to increase bail, there is no indication the court inquired whether Trujeque could pay the increased amount or whether any other conditions could secure his appearance in court without bail.

Surety posted a $125,000 bond (bond No. FCS250-1489548) to secure Trujeque's release from custody. When Trujeque failed to appear at a subsequent April 2016 readiness hearing, the court ordered bail forfeited in 180 days unless Trujeque was produced. The court later extended that deadline to March 30, 2017.

Shortly before that date, asserting Trujeque had been located in Mexico, Surety filed a motion to vacate the forfeiture and exonerate bail under section 1305, subdivision (g), or in the alternative toll time under section 1305, subdivision (e). The motion hearing was continued several times. It was eventually set for July 2018, and the court requested supplemental briefing from the parties.

The People filed a supplemental brief asking the court to "fully and finally forfeit bail and direct [the] clerk to enter summary judgment." Relying on the recent decision in *Humphrey I*, Surety filed a supplemental brief arguing for the first time that the court violated Trujeque's due process rights in setting bail.

The court denied Surety's motion to vacate in September 2018, rejecting its statutory claims under section 1305 as well as its constitutional challenge under *Humphrey I*. Even assuming *Humphrey I*'s due process analysis was correct, the court reasoned that Trujeque's failure to object to the bail increase at his arraignment forfeited the issue; Surety lacked standing to raise Trujeque's constitutional claim; and where bail was set

3

"under a valid statute," the bond was not void. Pursuant to the court's order, the clerk entered summary judgment against the Surety.

## DISCUSSION

In a nutshell, Surety argues it was error not to set aside the forfeiture where constitutional errors allegedly occurred in setting Trujeque's bail at $125,000. Joining several other courts in concluding that any *Humphrey* error in the setting of bail does not affect the enforceability of the bond, we reject this claim.

A.      *General Principles Applicable to Bond Forfeiture*

" 'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' [Citation.] 'While bail bond proceedings occur in connection with criminal prosecutions, they are independent from and collateral to the prosecutions and are civil in nature.' [Citation.] In that regard, the bail bond itself is a ' "contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." ' [Citation.] When a defendant who posts bail fails to appear at a scheduled hearing, the forfeiture of bail implicates not just the defendant's required presence, but constitutes a 'breach of this contract' between the surety and the government. [Citation.] Ultimately, if the defendant's nonappearance is without sufficient excuse, it is the surety who 'must suffer the consequences.' [Citation.]" (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709 (*Safety National*).) That is because in releasing the defendant bailee to the bondman's custody, the state receives " 'the assurance that a certain sum will be paid by the surety' " if the bailee fails to appear at requisite court proceedings. (*Id.* at p. 715.)

4

Sections 1305 to 1308 set forth specific statutory procedures governing the forfeiture of bail bonds. Trial courts must strictly comply with these procedures, as any noncompliance is treated as a jurisdictional defect. (*People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 998–999.) Under section 1305, subdivision (a), "[w]hen a defendant facing criminal charges is released on bail and fails to appear as ordered or as otherwise required and does not have a sufficient excuse, a trial court must declare the bail bond forfeited." (*Safety National, supra,* 62 Cal.4th at p. 707.) If the bond amount was greater than $400, the court clerk must mail notice of forfeiture to the surety, which then gives the surety up to 185 days to bring the defendant to court. (§ 1305, subds. (b)–(c); *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658.)

On a showing of good cause by the surety, the trial court may grant the surety an extension of up to 180 additional days. (§ 1305.4.) If the defendant is brought to court during that period, the forfeiture must be vacated and the bond exonerated. (§ 1305, subd. (c)(1); *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 253.) But if the surety fails to produce the defendant, the court has 90 days within which to enter summary judgment against the surety in the amount of the bond plus costs. (§ 1306, subds. (a) and (c); *People v. Financial Casualty & Surety, Inc.* (2021) 64 Cal.App.5th 405, 412 (*Financial Casualty-2021*).) Summary judgment in this context is a consent judgment entered pursuant to the surety's agreement included in the bond. (*County of L.A. v. Amwest Sur. Ins. Co.* (1983) 147 Cal.App.3d 961, 967; see § 1287, subd. (a) [undertaking must include consent to entry of summary judgment upon forfeiture].)

"Ordinarily, we review an order denying a motion to vacate the forfeiture of bail for abuse of discretion. [Citation.] When the appellate court

5

is deciding only legal issues, however, it conducts an independent review." (*Financial Casualty-2021, supra,* 64 Cal.App.5th at p. 412.) Here, Surety does not contend the trial court failed to follow the applicable statutory scheme in entering summary judgment. Instead, it suggests that improper procedures in setting bail in the collateral criminal proceeding affect its contract with the state. This presents a question of law, subject to de novo review. To provide background on Surety's claim, it is necessary to understand the *Humphrey* cases, which were decided almost two years after the bail forfeiture in this case.

B.    *Humphrey I and II*

Kenneth Humphrey was arrested and charged with residential robbery and burglary after he followed an elderly man into his San Francisco apartment, threatened to put a pillowcase over his head and demanded money. At his arraignment, Humphrey sought release on his own recognizance based on his age, lack of arrests, and community ties, but the trial court instead set bail at $600,000 based on the bail schedule. Although the court later reduced bail to $350,000 following a formal bail hearing, it never considered the defendant's ability to pay or whether nonfinancial means might adequately address public safety concerns and assure his appearance. Humphrey sought habeas relief. (*Humphrey I, supra,* 19 Cal.App.5th at pp. 1016–1022.)

Finding that this procedure in setting bail violated the defendant's due process and equal protection rights, the Court of Appeal granted Humphrey's habeas petition and directed the trial court to conduct a new bail hearing where it would consider his ability to pay and less restrictive alternatives to money bail. (*Humphrey I, supra,* 19 Cal.App.5th at pp. 1014, 1016, 1026.) Neither party petitioned for review and, on remand, the trial court conducted

6

a new bail hearing where it ordered Humphrey released subject to various nonfinancial conditions, including electronic monitoring, a stay away order, and substance abuse treatment. (*Humphrey II, supra,* 11 Cal.5th at p. 146.)

On request of several entities, the Supreme Court then granted review on its own motion "to address the constitutionality of money bail as currently used in California as well as the proper role of public and victim safety in making bail determinations." (*Humphrey II, supra,* 11 Cal.5th at pp. 146–147.) In an opinion issued after briefing in this appeal was complete, the Supreme Court affirmed *Humphrey I*, concluding that to comport with an arrestee's rights to substantive due process and equal protection, trial courts "must consider an arrestee's ability to pay alongside the efficacy of less restrictive alternatives when setting bail." (*Humphrey II*, at pp. 150–152.)

C.      *Arguments on Appeal*

Claiming the court committed *Humphrey* error in setting Trujeque's bail without considering his ability to pay or the availability of less restrictive alternatives to money bail, Surety argues this constitutional error rendered its bond contract with the state void and unenforceable. It reasons that in any indemnity agreement, a guarantor's liability is coextensive with that of the principal. Therefore, in its view, a bond surety's duty to the state must be "entirely dependent upon the validity of the obligation imposed by the court against the defendant." Although Surety recognizes that at least two courts rejected the identical claim it makes (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891 (*Accredited-2019*); *People v. North River Insurance Co.* (2020) 48 Cal.App.5th 226 (*North River*)), it suggests those cases (and others following them) were wrongly decided. Finally, Surety contends for the first time on appeal that to the extent errors in setting bail

7

did not affect the enforceability of the bond, the bond should nonetheless be set aside on unconscionability grounds.[3]

The People largely focus on Surety's standing to claim that *bail* was unconstitutionally set. They also distinguish this case from *Humphrey* on factual grounds, noting that unlike Keith Humphrey, Trujeque did not object to the scheduled bail, request a bail hearing, or seek habeas relief. Finally, citing *Accredited-2019, supra,* 34 Cal.App.5th 891 and *North River, supra,* 48 Cal.App.5th 226, the People contend that any constitutional error in setting bail would, in any event, not invalidate Surety's obligation under the bond. The People do not appear to address Surety's alternative unconscionability claim.

D.      *Enforceability of the Bond*

We are not writing on a blank slate: the argument Surety makes has been raised multiple times and rejected in at least four published opinions. For reasons we explain, we join these courts in concluding that any constitutional error in setting Trujeque's bail does not affect Surety's obligations to the state under the *bond.*

The Third Appellate District was the first to consider this claim, in *Accredited-2019, supra,* 34 Cal.App.5th 891. Rejecting threshold defenses raised by the People, the court first found (1) that the surety had standing to challenge alleged *Humphrey* error, and (2) that the surety had not forfeited

_____

[3]      Surety raises a host of peripheral claims that are unnecessary for us to resolve, ranging from a surety's standing to contest the constitutionality of the bail setting procedure to the alleged waiver of its claim based on Trujeque's failure to object to the increased bail amount and thereafter posting bail. Surety suggests that waiver applies to minor procedural or technical irregularities in setting bail, but not to violations of constitutional magnitude. Along a similar vein, Surety disagrees with the trial court that the mere fact of posting bail established that it was not excessive.

its claim by failing to object when bail was set three years before *Humphrey* was decided. (*Accredited-2019,* at p. 897.) That left the court to decide on the merits whether *Humphrey* error in setting the defendant's bail voided the bond. Noting that *Humphrey* was concerned solely with constitutionally adequate bail setting procedures and not the validity of a resulting bail bond contract, the court concluded that "[n]othing in *Humphrey* or the statutory rules regarding the setting of bail relieves the surety of its obligations under the bond once it has been executed." (*Accredited-2019,* at p. 898.) Just as procedural irregularities in setting bail had no legal effect on bail forfeiture, the court's "[f]ailure to comply with the procedural requirements of *Humphrey* . . . did not render the subsequently issued bond void." (*Accredited-2019,* at pp. 898–899.)

Division Two of the Second Appellate District reached a similar conclusion in *North River, supra,* 48 Cal.App.5th 226. It began by distinguishing void acts, where a court lacks fundamental jurisdiction over the subject matter and the parties, from voidable acts, where a court merely acts in excess of its jurisdiction or defined power. (*Id.* at p. 233.) From there, the court reasoned that any *Humphrey* error in setting bail would, at best, render the resulting bail order voidable, not void—the court had jurisdiction over the subject matter and the parties but merely failed to adhere to *Humphrey*'s procedural requirements in setting the bail amount. (*North River,* at p. 234.) That *Humphrey* rested on constitutional grounds, the court explained, "does not affect the jurisdictional analysis and does not elevate an otherwise voidable order into a void order." (*North River,* at p. 234.) Citing *Accredited-2019* and other authorities with approval, the court stated that "[t]ime and again, courts have ruled that errors in a trial court's setting of

9

bail during the criminal prosecution do not let the surety off the hook in collateral bail proceedings." (*North River,* at p. 235.)

On slightly different facts, the Fifth District was the next to chime in, in *People v. Accredited Surety & Casualty Co.* (2021) 65 Cal.App.5th 122 (*Accredited-2021*). The court first rejected facial and as-applied constitutional challenges to forfeiture of the bond under the Eighth Amendment. (*Id.* at pp. 129–133.) As a separate and independent ground for affirmance, the court then addressed the consequences assuming a constitutional violation occurred. Joining *Accredited-2019* and *North River*, it concluded that any *Humphrey* error in setting bail "does not render the bail bond unenforceable as to the surety." (*Accredited-2021,* at pp. 133–134.)

Finally, in *Financial Casualty-2021, supra,* 64 Cal.App.5th 405, Division Four of the Second Appellate District followed *Accredited-2019* and *North River* to conclude that even if the trial court committed *Humphrey* error in setting the criminal defendant's bail, that error did not void the judgment entered against the surety on the bond. (*Financial Casualty-2021,* at pp. 414–416.) For reasons explained in *North River*, a failure to comply with certain procedural requirements in setting bail would only render the judgment on the bond *voidable.* (*Financial Casualty-2021,* at pp. 414–415.) Moreover, as suggested in *North River*, policy considerations supported holding the surety to its bargain, rather than letting it reap the windfall of the bond premium without any risk on the bond should the bailee fail to appear. (*Financial Casualty-2021,* at p. 415.)[4]

---

[4]    Two other cases are helpful but less directly on point. Although the issue had been forfeited in *People v. American Surety Co.* (2020) 55 Cal.App.5th 265, 270–271, Division Two of the First Appellate District agreed with *Accredited-2019* in dicta that any *Humphrey* error in setting bail had no legal effect on the surety's obligation under the bond. Similarly, this

Against this weight of authority, Surety asserts that *Accredited-2019* and *North River* were wrongly decided and failed to appreciate basic indemnity principles underlying the bail bond contract. The same contention was aptly rejected in *Financial Casualty-2021* as being "long on inapposite authority, and short on case-specific analysis." (64 Cal.App.5th at p. 417, fn. 5.) Suffice to say, missing in Surety's discussion is the fact that it indisputably issued a bond promising to pay the State $125,000 if Trujeque failed to appear as required. When Trujeque thereby failed to appear, Surety's obligation under the *bond* came due.

At oral argument, counsel suggested that a bond surety owes no separate duties to the state but merely acts as a guarantor securing *defendant's* obligation to appear. Under this view, Surety did not breach any obligations to the state here because there were none—only the defendant owed such obligations. But whatever duties a criminal defendant might owe the state (and whatever the source of those responsibilities), Surety's own case authority confirms that a bond surety owes *independent* contractual obligations to the state. " 'A bail bond is in the nature of a contract between the government and the surety, in which the surety acts as a guarantor of the defendant's appearance under risk of forfeiture of the bond.' " (*People v. Lexington Nat'l Ins. Co.* (2015) 242 Cal.App.4th 1098, 1103 (*Lexington*).) In forming this contract, " 'the bail order is the offer, and the posting of the bond is the acceptance of that offer.' " (*Id.* at p. 1104, citing *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595 (*International Fidelity*).) By entering the bail bond contract, " 'the state and surety agree that if the state

___

court concluded that an allegedly unconstitutional Fourth Amendment waiver condition of bail would not void the surety's obligation on the bond. (*People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1223–1227.)

11

will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond.' " (*Lexington,* at pp. 1103–1104.)

Because a surety assumes independent contractual obligations in posting bond, it does not merely stand in the shoes of a defendant who may later claim that his or her constitutional rights were violated when the court set the bail amount. Entering the bond contract *after* a bail order, the surety has a full opportunity to assess the risks and benefits involved in undertaking to ensure the defendant's appearance when it agrees to post bond. To thereafter allow the surety to avoid the bond forfeiture, on speculation that bail would have been lower (and its corresponding bond obligations reduced) had the court conducted a proper *Humphrey* inquiry before setting bail, would effectively give the surety a post hoc windfall.[5]

Without belaboring the point, we find the reasoning in *Accredited-2019*, *North River, Accredited-2021,* and *Financial Casualty-2021* persuasive. Like those courts, we conclude that any *Humphrey* error in setting the amount of a criminal defendant's bail does not invalidate the bond or subsequent summary judgment on that bond. This outcome is compelled by the fact that the contract between the surety and the state is collateral to, but independent from, the bail agreement between the court and the criminal

---

[5] Indeed, when a defendant absconds and the surety claims *Humphrey* error after the fact to avoid forfeiture of its bond, a court cannot go back in time and evaluate a criminal defendant's ability to pay or the availability of less restrictive alternatives to money bail. The same cannot be said for the situation where a criminal defendant who posted collateral without obtaining a surety bond later appears in court to challenge forfeiture on the ground that bail was improperly set.

defendant. At the time Surety agreed to issue a $125,000 bond and produce him in open court where his presence was required, the amount of Trujeque's bail had already been set. Surety was free to accept or reject that contractual offer in undertaking the bond. As a result, any constitutional violation of *Trujeque*'s rights in setting the amount of bail did not affect the enforceability of Surety's independent contractual obligations under the bond.[6]

E.     *The Unconscionability Claim*

Finally, Surety suggests for the first time on appeal that even if the bail contract was properly formed, it would be *unconscionable* to enforce it. According to Surety, a bail contract is a "contract of adhesion" because bail procedures are statutorily defined and require the criminal defendant to either accept the terms offered by the state or remain in custody. With sureties paying a tax on gross premiums received, the State received the benefit of setting higher bail. Ipso facto, reasons Surety, it would be unconscionable to enforce a judgment based on the forfeiture of bail that was unconstitutionally set.

---

[6]     Surety's cases do not suggest otherwise. Where there are discrepancies between the bail set by the court and the bond, courts have had no trouble concluding that the court was without jurisdiction to order forfeiture. (*People v. Accredited Surety & Casualty Co.* (2012) 209 Cal.App.4th 617, 622; *Lexington, supra,* 242 Cal.App.4th at p. 1104.) Likewise, once a bond is exonerated upon a defendant's remand into custody, the court lacks fundamental jurisdiction to enter summary judgment on that bond. (*International Fidelity, supra,* 204 Cal.App.4th at p. 595.) But none of Surety's cases involve a scenario like the one here, where the trial court is charged with a procedural error (albeit of constitutional magnitude) in setting the amount of bail, and the bond matches the bail actually set. Any suggestion that bail would have been lower had the trial court held a constitutionally sufficient hearing, and thereby reduced the surety's liability under the bond, is conjecture.

A surety is generally precluded from raising a new theory of relief for the first time on appeal.  (See *Financial Casualty-2021, supra,* 64 Cal.App.5th at p. 416.)  Here, moreover, we would reject the claim even if we reached it.  Surety focuses on the unconscionability of a criminal defendant's "contract" in setting bail.  But "the bail-setting order was not a contract because it did not require [Trujeque's] consent.  (See Civ. Code, § 1550 [mutual consent is an essential element of any contract]; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 789 [same].)  In the bail bond context, the defendant and the state do not contract with each other; rather, they each contract with the surety.  (*North River, supra,* 48 Cal.App.5th at p. 235.)" (*Financial Casualty-2021,* at p. 417.)  As Surety has not identified any unconscionability in the contract *between it and the state*, its argument fails.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to recover its costs on appeal.

DATO, J.

WE CONCUR:


AARON, Acting P. J.


DO, J.

14