[No. F061451. Fifth Dist. Mar. 21, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
INTERNATIONAL FIDELITY INSURANCE COMPANY, Defendant and
Appellant.

## COUNSEL

E. Alan Nunez for Defendant and Appellant.

Colleen Carlson, County Counsel, and David Hamilton, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**DAWSON, Acting P. J.**—A surety on a bail bond is appealing an order denying its motion to set aside summary judgment, to discharge forfeiture, and to exonerate the bond. The surety contends its $65,000 bond was void. The People disagree. We agree with the surety and accordingly reverse.

### FACTS AND PROCEEDINGS

On November 25, 2008, Bankers Insurance Company (Bankers) posted a $35,000 bond for the release of Jose Juan Enriquez from custody in Kings Superior Court case No. 10C0299.

On August 25, 2009, at a court appearance at which Enriquez was present, a deputy district attorney informed the court that Enriquez had outstanding warrants in four other driving under the influence cases and requested that Enriquez be remanded to custody in case No. 10C0299. The trial court continued the case until September 1, 2009, asked that the other cases be pulled for the hearing on that date, and remanded Enriquez to the custody of the sheriff. The court stated: "Bail is going to be set at this time at $100,000." Subsequently, the court stated, "He does have a bail bond in this matter. How much is the bail bond—$35,000. I'll allow the $35,000 to remain. The additional amount is $65,000." The deputy district attorney responded, "That's fine, thank you, your Honor," and the proceedings were concluded.

Later on August 25, 2009, International Fidelity Insurance Company (International Fidelity), a New Jersey corporation, through its agent Kings

County Bail Bonds, issued bond No. IS100K-16653 in the amount of $65,000. The bail bond stated that Enriquez was ordered to appear in his case on September 1, 2009, at 8:15 a.m.

On September 1, 2009, Enriquez's case was called and he was not present. The trial court ordered the forfeiture of the $35,000 bail bond posted by Bankers and the $65,000 bail bond posted by International Fidelity. The minute order contains the following notation: "Court notes [Enriquez] was remanded on 8/25/09 with bail set at $100,000. [Enriquez] having originally posted bail bond #555038176-1 in the amount of $35,000 & additionally posted bail bond #IS100K-16653 in the amount of $65,000."

On September 3, 2009, a notice of forfeiture was sent to Bankers concerning its $35,000 bond. The appellate record does not contain a notice of forfeiture relating to International Fidelity's $65,000 bond, but International Fidelity does not contend it did not receive notice.

Bankers filed a motion to vacate forfeiture and exonerate the bail bond, which was heard on January 7, 2010. On January 14, 2010, the trial court filed an order granting the motion. The order provided the following rationale: "The bail bond posted by [Bankers] was exonerated as a matter of law when [Enriquez] was remanded into custody [on August 25, 2009]. The bond could not be reinstated without notice to the surety. Since such notice was not given, the forfeiture of the bond is vacated."[1]

On March 2, 2010, International Fidelity, through its agent Kings County Bail Bonds, filed a motion to extend the 185-day period provided by Penal Code section 1305, subdivision (b). The motion was opposed and, on March 23, 2010, the trial court filed an order granting a 60-day extension of time under Penal Code section 1305.4. The order stated the court found good cause for extending the period of time in which forfeiture may be vacated in the event of the defendant's surrender or arrest. As a result, the exoneration period (sometimes called the appearance period) was extended to May 24, 2010.

On August 19, 2010, the trial court granted summary judgment pursuant to Penal Code section 1306 against International Fidelity in the sum of $65,000. The court found the bail bond was declared forfeited, the forfeiture had not

---

[1] The notice referred to in the order is contained in Penal Code section 1305, subdivision (c)(4), which provides: "In lieu of exonerating the bond, the court may order the bail reinstated and the defendant released on the same bond if both of the following conditions are met: [¶] (A) The bail is given prior notice of the reinstatement. [¶] (B) The bail has not surrendered the defendant."

been set aside, and more than 185 days (as extended pursuant to § 1305.4) had elapsed since the forfeiture. Notice of entry of the summary judgment was sent the same day.

On September 20, 2010, International Fidelity filed a motion to set aside summary judgment and to discharge forfeiture and exonerate bail. The trial court denied the requested relief and, on November 15, 2010, International Fidelity filed its notice of appeal.

## DISCUSSION

### I. *Standard of Review*

An order denying a motion to vacate summary judgment on a bail bond forfeiture is an appealable order and is a proper vehicle for considering a jurisdictional attack on the summary judgment. (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5, fn. 4 [104 Cal.Rptr.3d 87].) Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. (*Id.* at p. 5.) When the appellate court is deciding only legal issues, however, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. (*People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919–920 [66 Cal.Rptr.2d 29].) When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review.

In this case, the facts are undisputed, the question presented is purely one of law, and we will conduct an independent review.

### II. *The Order Setting Bail at $100,000 and the $65,000 Bail Bond*

#### A. *Contentions of the Parties*

International Fidelity contends that the $65,000 bond was void because it did not conform to the order of the trial court. The People answer that the bond did conform to the order of the court and, therefore, was not void. To quote the respondent's brief: "As there was already a $35,000 bond in place the jail released Mr. Enriquez as $65,000 plus $35,000 equals $100,000. The bond amount was correct."

International Fidelity asserts the People are mistaken in their reasoning because, by operation of law, the $35,000 bond was exonerated when Enriquez was remanded to custody on August 25, 2009. Because only the $65,000 bond was in place when Enriquez was released from jail, and

Enriquez thus was released on less than the full amount of bail ordered, the $65,000 bond was void as a matter of law.

### B. *Status of the $35,000 Bond when Enriquez Was Remanded*

The parties' dispute over whether the $65,000 bond conformed to the trial court's order is rooted in different characterizations of the status of the $35,000 bond when Enriquez was remanded.

International Fidelity argues the $35,000 was exonerated by operation of law and no longer in effect when the $65,000 bond was posted. International Fidelity supports the argument that the bond was exonerated by operation of law (not the Jan. 14, 2010, order of the court) by citing *People v. McReynolds* (1894) 102 Cal. 308 [36 P. 590], *Kiperman v. Klenshetyn* (2005) 133 Cal.App.4th 934, 939 [35 Cal.Rptr.3d 178], and *People v. Amwest Surety Ins. Co.* (1986) 180 Cal.App.3d 444, 448 [225 Cal.Rptr. 592].

The People view the $35,000 bond as being in place when Enriquez was released and rely on *People v. Ranger Ins. Co.* (1998) 61 Cal.App.4th 812 [71 Cal.Rptr.2d 806] for the following argument: "Whatever Banker's rights, the court **did not** order the $35,000 bond exonerated when [Enriquez] was remanded. Instead, the court stated its intent that a second bond be issued for $65,000 to equal a total of $100,000. That is exactly what occurred. International [Fidelity] received the benefit of their bargain by writing the bond for a fee of $65,000 [*sic*] [citation] and should not now be excused from performing their side of the bargain."

■ But the People's position is in conflict with the express terms of Penal Code section 1305, subdivision (c)(1), which provides that, where a defendant appears in custody after a previous failure to appear and the forfeiture of his or her bail, the court shall "direct the order of forfeiture to be vacated and the bond exonerated. If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated."

■ In *Kiperman v. Klenshetyn, supra,* 133 Cal.App.4th 934, the court addressed the consequences of remanding a defendant who had been released on bail. "Upon remand of the defendant because of the higher bail, the first bond in the amount of $250,000 was exonerated by operation of law. This is so because the responsibilities of a surety are based upon the surety's custody of the person bailed (*People v. McReynolds*[, *supra,*] 102 Cal. 308, 311–312 . . .), and [the surety] could no longer have custody over the defendant who had been remanded." (*Kiperman v. Klenshetyn, supra,* 133 Cal.App.4th at p. 939; see also *People v. Amwest Surety Ins. Co., supra,* 180

Cal.App.3d at p. 447 ["The liability of defendant surety ceased when [the defendant] was remanded to custody of the sheriff."].)

Based on the statute and case law, we conclude that the first bond in the amount of $35,000 was exonerated by operation of law when Enriquez was remanded to the custody of the sheriff on August 25, 2009.[2] Exoneration by operation of law means the surety's obligations under the $35,000 bond were extinguished once the sheriff took custody of Enriquez. (See *People v. Safety National Casualty Corp.* (2007) 150 Cal.App.4th 11, 14 [57 Cal.Rptr.3d 659] [statute stating " 'bail shall be exonerated' " upon grant of probation was self-executing, i.e., surety's obligations under the bond were extinguished upon pronouncement of sentence].)

The determination that the $35,000 bond was exonerated by operation of law leads to the conclusion that the terms for bail established by the trial court were contrary to applicable legal principles. The trial court mistakenly believed it could allow the $35,000 bond to remain after Enriquez was remanded to the custody of the sheriff. This portion of the court's order was unlawful as it is beyond the authority of the court to remand a defendant and continue the surety's liability on the bond. (Pen. Code, § 1305, subd. (c)(4).) The court's mistaken belief led it to state that the $100,000 bail could be met by posting an additional $65,000, when it was legally impossible for the additional amount to provide a total of $100,000 bail.[3]

## C. *Legal Consequences of the Unlawful Bail Order*

To determine the legal consequences that flow from the unlawful portion of the bail order, we begin with an examination of the relationship created between the state and the surety when a bail bond is posted.

■ A bail bond is characterized as a contract between the government and the surety. (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 [280 Cal.Rptr. 58].) " 'In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond.' [Citation.]" (*Ibid.*)

---

[2] The trial court reached the same conclusion in its January 14, 2010, order exonerating the $35,000 bail bond issued by Bankers. The court concluded that it had the authority to remand Enriquez into custody and "such a remand exonerated the bail as a matter of law."

[3] In this regard, we disagree with the view expressed in *People v. Ranger Ins. Co., supra,* 61 Cal.App.4th at page 817 that an exonerated bond can be used in combination with another bond to provide the full amount of bail set by the trial court.

The contractual nature of the relationship between the government and the surety leads to the conclusion that the bail order is the offer, and the posting of a bond is the acceptance of that offer. In this case, the offer (bail order) contained two items of consideration in exchange for the posting of the $65,000 bond. The first was the release of Enriquez from the sheriff's custody and the second was the extension of the original $35,000 bail bond. In other words, International Fidelity agreed to issue the $65,000 bond in exchange for the release of Enriquez with the reduction of its risk that came from having the $35,000 bail bond in place. Here, we disagree with the People's contractual analysis and resulting conclusion that International Fidelity received the benefit of its bargain when it wrote its bond. In our view, International Fidelity agreed to post an additional $65,000 of a total of $100,000 bail, and it did not receive the benefit of the additional $35,000 of bail being in place.

■ Civil Code section 1608 provides that, if any part of several considerations for a single object is unlawful, "the entire contract is void." ■ In this case, part of the consideration for the issuance of the bond was unlawful—the $35,000 could not stay in place while Enriquez was remanded to the custody of the sheriff. As a result, we conclude that the contract between the state and International Fidelity concerning the $65,000 bond was void.[4]

■ Our conclusion that the bond was void is consistent with the policy disfavoring forfeitures in general and forfeitures of bail in particular. (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263] [bail forfeiture statutes strictly construed to avoid the harsh results of forfeiture, which protects the surety "and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody"].)

■ Because the $65,000 bond was void, there was nothing over which the trial court could exercise its jurisdiction. The situation of a void bond is similar to cases in which the bail bond has been exonerated under the statute. Where the bond does not exist because it was exonerated, the court lacks fundamental jurisdiction, and any summary judgment purportedly entered on that bond is void. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [16 Cal.Rptr.3d 76, 93 P.3d 1020].) When the summary judgment entered on a bail bond is void, that judgment is subject to attack at

---

[4] In *County of Merced v. Shaffer* (1919) 40 Cal.App. 163 [180 P. 342], the court stated: "It is not disputed that the bond in a criminal proceeding is purely statutory and must conform to the statute and the order of the court. If it fails to do so, it is not good even as a common-law obligation. [Citations.]" (*Id.* at p. 167.) The present case is slightly different because the bail order (not the bond) failed to conform to the applicable rules of law.

any time. (*People v. Amwest Surety Ins. Co.* (2004) 125 Cal.App.4th 547, 550 [22 Cal.Rptr.3d 810].) Therefore, International Fidelity's motion challenging the summary judgment is not time-barred.

Based on the foregoing, we conclude the summary judgment entered in this case must be vacated on the ground that it, like the $65,000 bond, is void.

## DISPOSITION

The summary judgment on forfeiture of bail dated August 19, 2010, and the order denying the motion to set aside that judgment are reversed. The case is remanded for the trial court to enter orders granting the motion and vacating the forfeiture. International Fidelity is awarded its costs on appeal.

Kane, J., and Franson, J., concurred.