Filed 9/25/24  P. v. The North River Ins. Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> THE NORTH RIVER INSURANCE COMPANY et al., <br><br> Defendants and Appellants. | B325691, B328081 <br><br> (Los Angeles County Super. Ct. Nos. SJ4402, SJ4403) |

APPEALS from orders of the Superior Court of Los Angeles County, Natalie Stone, Judge.  Affirmed.

Jefferson T. Stamp for Defendants and Appellants.

Dawyn R. Harrison, County Counsel, Richard P. Chasting, Assistant County Counsel, Melissa A. McCaverty, Deputy County Counsel, for Plaintiff and Respondent.

# INTRODUCTION

The North River Insurance Company appeals from the trial court's orders denying two motions by North River to set aside the summary judgments on two bail bonds that North River's agent, Bad Boys Bail Bonds, posted to secure the release of Alvaro Calderon in two criminal cases. In each case, North River argues the trial court lacked "fundamental jurisdiction over the bail bond" because the bond was void under *BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349 (*Caldwell*). In that case the court held cosigner bail premium financing agreements that do not comply with statutory consumer protection notice provisions are unenforceable. North River argues that, because "part of the consideration for the bail bond has been deemed unlawful, the entire bail bond contract is void" and that therefore the trial court was "without fundamental jurisdiction to enforce the bond via summary judgment."

North River's argument is based on a false premise. *Caldwell* concerned a contract between a bond cosigner and the surety. These cases concern a contract between the surety and the government. *Caldwell* does not affect the validity of the latter. Because the bonds here were valid, the trial court had jurisdiction, and the court did err in denying North River's motions to set aside the summary judgment. Therefore, we affirm both orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2015 Calderon was arrested and taken into custody.  Bail was set at $90,000.

The same day, Yasmin Vasquez submitted an application to Bad Boys for a $90,000 bail bond.  Bad Boys, acting on behalf of North River, entered into an Indemnity Agreement with Vasquez where North River agreed to post the bail bond for Calderon's release, and Vasquez agreed to reimburse North River for various expenses.  The Indemnity Agreement provided that, if Calderon failed to appear in his criminal case, Vasquez would pay North River and Bad Boys the costs associated with returning Calderon to custody.  The Indemnity Agreement also provided that, if North River and Bad Boys were unable to exonerate the bail bond before the entry of summary judgment, Vasquez would pay North River and Bad Boys the full amount of the bond.

The Indemnity Agreement required Vasquez to pay an annual premium of $7,200 for the bond.  To facilitate the payment of the premium, Bad Boys and Vasquez entered into another contract titled Unpaid Premium Agreement, also known as a bail bond premium financing agreement, that prescribed a monthly installment payment plan to "facilitate payment of the premium."  The Unpaid Premium Agreement required Vasquez to pay $1,000 down and monthly installments of $500, plus a 10 percent late charge and "legal/collection fees," and contained an acceleration clause in the event of breach or forfeiture of the bond.  Bad Boys also required Vasquez to sign a document titled Indemnitor/Guarantor Checklist.  After Vasquez signed the documents, Bad Boys posted North River's bond, and Calderon

3

was released from custody. On September 9, 2015 Calderon signed the same four documents.

On September 10, 2015 the People filed a felony complaint against Calderon. After Calderon failed to appear at his arraignment on September 29, 2015, the court ordered the bail forfeited. On October 5, 2015 the court mailed North River and Bad Boys a notice of forfeiture stating they would have 185 days to get Calderon to court. The trial court subsequently granted two extensions, ultimately to April 10, 2017. North River and Bad Boys failed to either surrender Calderon or move to vacate the forfeiture and exonerate the bond by the deadline. On May 16, 2017 the court entered summary judgment on the bond.

In December 2021 the court in *Caldwell* affirmed an order granting a motion for a preliminary injunction enjoining Bad Boys from enforcing bail bond premium financing agreements with individuals who had cosigned those agreements on behalf of an arrestee without first receiving statutory notices required by certain consumer protection statutes. (*Caldwell*, *supra*, 73 Cal.App.5th at p. 358.) According to North River, Bad Boys did not give Vasquez the required consumer protection notice, and Bad Boys and North River are enjoined from collecting the premium from Vasquez.

On June 28, 2022, 61 months after the entry of judgment, North River filed a motion to set aside the summary judgment, vacate the forfeiture, and exonerate the bond. On September 16, 2022 the court denied North River's motion. North River timely appealed.

Meanwhile, on February 6, 2015 Calderon was arrested again. Bail was set this time at $75,000. The next day Ana Rosa Calderon submitted an application to Bad Boys for a $75,000 bail

4

bond.  Ana Calderon signed the same four documents Vasquez signed in September 2015.

On February 10, 2015 the People filed a felony complaint against Calderon.  After Calderon failed to appear at his arraignment on October 13, 2015, the court ordered the bail forfeited.  On October 16, 2015 the court mailed North River and Bad Boys a notice of forfeiture stating they would have 185 days to get Calderon to come to court.  The trial court granted two extensions, ultimately to March 28, 2017.  North River and Bad Boys failed to either surrender Calderon or move to vacate the forfeiture and exonerate the bond by the deadline.  The court entered summary judgment on the bond on May 16, 2017.  On June 28, 2022, North River filed a motion to set aside the summary judgment, vacate the forfeiture, and exonerate the bond in the second case as well.  The trial court denied the motion. North River timely appealed.

# DISCUSSION

## A.    *Applicable Law and Standard of Review*

### 1.    *The Bail Bond Transaction*

"The bail bond transaction 'is a function of "two different contracts between three different parties."'" The first contract is "'between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and [the defendant's] promise to pay the full amount of the bond in the event of [the defendant's] nonappearance.'" (*Caldwell*, *supra*, 73 Cal.App.5th at p. 363.) The second contract is the bail bond. (*Ibid*.) The "'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).) Often, as here and in *Caldwell*, there is a third contract when the defendant or a cosigner cannot pay the entire bond premium at the time of the bond: the bond premium financing agreement, sometimes called (here and in *Caldwell*) an Unpaid Premium Agreement. The bond premium financing agreement is "between an arrestee (or cosigner) and the bail bond agent to finance the payment of the premium . . . to secure the undertaking of bail and the arrestee's release from detention." (*Caldwell*, at p. 363.)

### 2.    *The Bail Bond Contract*

"The contractual nature of the relationship between the government and the surety leads to the conclusion that the bail

6

order is the offer, and the posting of a bond is the acceptance of that offer." (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595 (*International Fidelity*).) "Under the terms of the bail bond agreement, the defendant is transferred from the government's custody to the constructive custody of the surety." (*People v. Accredited Surety & Casualty Co.* (2022) 77 Cal.App.5th 185, 191.) Thus, "'the consideration of the bond, accruing to the sureties, is [the defendant's] freedom from any other custody.'" (*People v. Lexington National Ins. Co.* (2007) 147 Cal.App.4th 1192, 1199.) "At any time, a surety may surrender a defendant and exonerate a bond under Penal Code section 1300, subdivision (a)." (*People v. Bankers Ins. Co.* (2010) 181 Cal.App.4th 1, 5; see *Lexington*, at p. 1198 ["'When the bail has served its purpose, the surety will be "exonerated," i.e., released from the obligation.'"].)

"'The object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. (*American Contractors*, *supra*, 33 Cal.4th at p. 657.) "If the defendant subsequently fails to appear as required and the failure to appear is not excused, then the court must declare the bail bond forfeited." (*People v. Financial Casualty & Surety, Inc.* (2022) 78 Cal.App.5th 879, 884 (*Financial Casualty*); see Pen. Code, § 1305, subd. (a); *People v. The North River Ins. Co.* (2020) 53 Cal.App.5th 559, 563.) "After the court declares the bail bond forfeited and the clerk of the court mails notice to the surety, the surety has 185 days (known as the appearance period) to secure the defendant's appearance in court." (*Financial Casualty*, at p. 884.) During the appearance period, "the surety may either cure its breach of the bond by

7

producing the defendant or demonstrate why the breach should be excused." (*Id.* at p. 887.)

If the bail forfeiture has not been set aside before the expiration of the appearance period, the court must enter summary judgment against the surety. (*Financial Casualty*, *supra*, 78 Cal.App.5th at p. 885; see Pen. Code, § 1306.) A bail summary judgment becomes final 60 days after the clerk mails the notice of entry of judgment. (*American Contractors*, *supra*, 33 Cal.4th at p. 659.) If the surety wants to challenge the judgment, the surety must move to set aside summary judgment before it becomes final. (*Ibid.*) "If the defendant fails to appear, the surety becomes the state's absolute debtor for the full amount of the bond." (*Caldwell*, *supra*, 73 Cal.App.5th at p. 363.)

"An order denying a motion to vacate summary judgment on a bail bond forfeiture is an appealable order and is a proper vehicle for considering a jurisdictional attack on the summary judgment." (*International Fidelity*, *supra*, 204 Cal.App.4th at p. 592.) "Voidness is a legal question we review de novo; the discretionary decision whether to set aside a void judgment or order is, as one would anticipate, reviewed solely for an abuse of that discretion." (*People v. The North River Ins. Co.* (2020) 48 Cal.App.5th 226, 232; see *International Fidelity*, at p. 592.)

B.  *North River May Not Challenge the Summary Judgments Unless They Are Void on Their Face*

A surety may move under Code of Civil Procedure section 473, subdivision (b), to set aside a summary judgment on a forfeited bail bond. (*People v. The North River Ins. Co.* (2011) 200 Cal.App.4th 712, 724.) "'Once six months have elapsed since the entry of a judgment [or order], "a trial court may grant a

8

motion to set aside [a] judgment [or order] as void only if the judgment [or order] is void on its face.'"'" (*People v. The North River Ins. Co.*, *supra*, 48 Cal.App.5th at p. 233; see *Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 960 ["Generally, defendants have six months from entry of judgment to move to vacate" under Code of Civil Procedure section 473, subdivision (b), but if "'the judgment is void on its face, then the six months limit set by section 473 to make other motions to vacate a judgment does not apply.'"].) "'"A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll"' 'or [the] court record without consideration of extrinsic evidence.'" (*North River*, *supra*, 48 Cal.App.5th at p. 233; see *Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021 ["An order is considered void on its face only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence."]; *OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327 ["no extrinsic evidence is allowed"].)

The trial court entered summary judgment against North River on both bonds in May 2017. North River did not move to set aside the judgments until June 2022. Thus, unless the summary judgments were void on their face, North River's motions, filed more than five years after the entry of summary judgment, were (extremely) untimely, and the trial court could not grant them. (See *People v. The North River Ins. Co.*, *supra*, 48 Cal.App.5th at p. 233 [motion by surety under Code of Civil Procedure section 473, subdivision (b), to set aside the summary judgment filed "more than 22 months after that judgment was entered" was untimely].)

9

C.    *The Summary Judgments Are Not Void on Their Face
       or Otherwise*

North River does not argue the judgments are void on their face. North River states it "admittedly relied on extrinsic evidence in support of [its] motion to set aside summary judgment." North River, however, relies on an exception to the void-on-its-face rule "barring collateral attacks to judgments that appear valid on the face of the record": "[I]f a party admits facts showing that a judgment is void, or allows such facts to be established without opposition, then, as a question of law, a court must treat the judgment as void upon its face." (*OC Interior Services, LLC v. Nationstar Mortgage, LLC, supra*, 7 Cal.App.5th at p. 1328.) North River argues the judgments should be "treated" as void on their face because, according to North River, the People admitted the facts showing the judgments were void, or at least did not object "to any of the facts established in the motion" showing the judgments were void.

The exception does not apply here. The primary "fact" North River relied on in both motions was the preliminary injunction affirmed by the court in *Caldwell*. The People opposed North River's motions and argued, in response to North River's only argument, "nothing in *Caldwell* affects the validity of the bail bond." The People also argued that, "[j]ust as the indemnity agreements are connected but distinct from the bail bond," the "ancillary premium agreements [are] also distinct from the bail bond." The People argued North River did not "submit any evidence or argument suggesting that the indemnity agreements cannot be enforced against the defendant/arrestee or the cosigner or that the premium agreement cannot be enforced against the

10

defendant/arrestee." The People did not admit anything suggesting the summary judgments were void.

In any event, the judgments are not void, on their face or otherwise. Neither of the two cases North River relies on, *Caldwell*, *supra*, 73 Cal.App.5th 349 and *International Fidelity*, *supra*, 204 Cal.App.4th 588, suggests the judgments are void, let alone void on their face.

"A judgment is void only when the court entering that judgment lack[ed] jurisdiction in a fundamental sense due to the entire absence of power to hear or determine the case resulting from the absence of authority over the subject matter or the parties. To be sure, a court that acts contrary to [its] authority to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites is often said to lack jurisdiction. But such acts do not render the court's ensuing judgment or order void. That is because jurisdictional errors can be of two types: A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*People v. The North River Ins. Co.*, *supra*, 48 Cal.App.5th at p. 233, internal quotation marks and citations omitted.)

In *Caldwell*, *supra*, 73 Cal.App.5th 349 the court held "a bail bond premium financing agreement between a cosigner and the bail bond agent is a consumer credit contract subject to the notice provision of [Civil Code] section 1799.91 and related statutory protections." (*Id.* at p. 358.) The court in *Caldwell* affirmed an order granting a motion for a preliminary injunction enjoining a bail bond company from enforcing bail bond premium financing agreements with individuals who had cosigned those

11

agreements on behalf of an arrestee without first receiving the statutory notices required by certain consumer protection statutes. (*Ibid.*) So how does the court's decision in *Caldwell* make the bonds here void? According to North River, it's because "the State supported a preliminary injunction [in *Caldwell*] invalidating the bond premium from third party cosigners like Ms. Vasquez," and therefore the bond in each case is "void and the trial court lack[ed] fundamental jurisdiction to enforce the bond via summary judgment."

The decision in *Caldwell*, however, does not make the bail bonds here void. *Caldwell* concerned only a bond premium financing agreement, an agreement between a cosigner and the bail agent that "is ancillary to the bail bond transaction." (*Caldwell*, *supra*, 73 Cal.App.5th at p. 368.) Under *Caldwell* the failure to give notices required by consumer protection statutes may render the premium financing agreement unenforceable. But North River provides no authority for transferring that unenforceability from a premium financing agreement to the bail bond, a different contract between different parties. No one is suggesting North River or its bail agent did not give the government notice required by the consumer protection statutes. The validity of the bail bonds does not depend on the enforceability of a premium financing agreement.

*International Fidelity*, *supra*, 204 Cal.App.4th 588, like this case, did involve the bail bond contract between the surety and the government, rather than (as in *Caldwell*) an agreement between the agent and the defendant or a cosigner. In *International Fidelity* the surety posted a $35,000 bond to secure the defendant's release from custody. At a hearing nine months later, the court learned the defendant had outstanding warrants

for his arrest, remanded him to custody, and increased the bond to $100,000, not by requiring a $100,000 bond, but by allowing the original $35,000 to stand and requiring an additional $65,000 bond.  (*Id.* at pp. 590, 594.)  The court in *International Fidelity* held this was error because, when the trial court remanded the defendant to custody at the later hearing, the bail was exonerated by operation of law, and the obligations of the surety that posted the $35,000 bond were extinguished; the defendant was in custody.  The court in *International Fidelity* stated:  "The court's mistaken belief led it to state that the $100,000 bail could be met by posting an additional $65,000, when it was legally impossible for the additional amount to provide a total of $100,000 bail."  (*Id.* at p. 594.)  The court held that, because the trial court in that case could not remand the defendant *and* continue the surety's liability on the first bond, the $65,000 bond was void, and "there was nothing over which the trial court could exercise its jurisdiction."  (*Id.* at pp. 594-595.)

There is no legal impossibility here.  The trial court set bail once in each case at $90,000 and $75,000, respectively.  When Calderon failed to appear and North River, after receiving several extensions, failed to produce him, the trial court properly forfeited the bonds.

13

## DISPOSITION

The orders are affirmed.  The People may recover their costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.

14