Filed 11/20/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B328079 |
| Plaintiff and Respondent, | Super. Ct. Nos. SJ4131/NA095439) |
| v. | |
| THE NORTH RIVER INSURANCE COMPANY, | |
| Defendant and Appellant; | |
| BAD BOYS BAIL BONDS, | |
| Real Party in Interest and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Natalie P. Stone, Judge. Affirmed.

Jefferson T. Stamp for Defendant and Appellant and Real Party in Interest and Appellant.

Dawyn R. Harrison, County Counsel, Richard P. Chastang, Assistant County Counsel, and Kevin J. Engelien, Deputy County Counsel, for Plaintiff and Respondent.

———————————

Defendant and appellant The North River Insurance Company (Surety) and its bail agent real party in interest and appellant Bad Boys Bail Bonds (Bail Agent) appeal from an order denying their motion to set aside a summary judgment based on a forfeited bail bond, vacate the forfeiture, and exonerate the bond.  We affirm the order.

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

In April 2013, Michael Riste applied to the Surety for a bail bond for his son Michael Peterson, a criminal defendant.  Riste signed an "Indemnity Agreement for Surety Bail Bond" (Indemnity Agreement) with the Bail Agent.  The Indemnity Agreement required Riste to pay the Bail Agent a $10,000 premium "in consideration of" the Bail Agent arranging for the Surety to execute the bail bond.  Riste also signed an "Unpaid Premium Agreement" (Premium Agreement) which provided that he would pay the premium to the Bail Agent in the form of a

---

[1]     We grant appellants' unopposed motion to augment the record on appeal.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)  Appellants sought to add two trial court filings: appellants' "Notice of Motion and Motion to Set Aside Summary Judgment, Vacate Bail Forfeiture and Exonerate the Bail Bond, Memorandum of Points and Authorities, Declaration of Attorney Jefferson T. Stamp, Proposed Order, filed June 24, 2022"; and the People's "Opposition to Motion to Set Aside Summary Judgment, Vacate Bail Forfeiture and Exonerate the Bail Bond, filed August 15, 2022."  Both documents were designated as part of the record on appeal by appellants, but were omitted from the clerk's transcript.

$2,000 down payment and 50 monthly[2] installments. In addition, Riste signed and initialed an "Indemnitor/Guarantor Check List" (Check List). The Check List clarified that the Surety "is not a party to any premium financing. Any financial agreement is strictly between the bail agent/agency" and Riste. After his release, Peterson signed identical documents.

On behalf of the Surety, the Bail Agent executed a bail bond for Peterson. Through the bond, the Surety undertook to ensure that Peterson would appear at certain future criminal proceedings after his release from custody, and to pay the State of California $100,000 if Peterson failed to appear. The bail bond included a space to indicate the premium charged for the bond, which was left blank.[3]

The court declared bail forfeited after Peterson failed to appear at a pretrial conference, and in October 2015 it entered summary judgment against the Surety on the forfeited bond. Two different panels of this court affirmed the denial of appellants' previous motions to set aside summary judgment, vacate the forfeiture, and exonerate the bond. (*People v. The North River Insurance Company et al.* (July 5, 2018, B271633) [nonpub. opn.]; *People v. The North River Insurance Company et al.* (Aug. 31, 2020, B297108) [nonpub. opn.].)

---

[2] The "Unpaid Premium Agreement" with Peterson provides that "[e]ach payment is due on the 13th of every month until paid in full[] [s]tarting on 5/13/2013." The identical language appears in the "Unpaid Premium Agreement" with Riste, with the word "month" omitted: "Each payment is due on the 13th of every [*sic*] until paid in full starting 5/13/2013."

[3] Appellants assert this was an "apparent scrivener's error."

In October 2020, a putative class action cross-claim was filed against BBBB Bonding Corporation (BBBB), which does business as the Bail Agent. (*BBBB Bonding Corp. v. Caldwell* (2021) 73 Cal.App.5th 349 (*Caldwell*).) The cross-claim argued that BBBB's bail bond premium financing agreements are subject to Civil Code[4] section 1799.91, which requires creditors to provide notice to cosigners about the risks of guaranteeing consumer credit agreements, and are therefore unenforceable under section 1799.95. (*Caldwell,* at p. 358.) The trial court agreed. It granted the cross-complainant's motion for a preliminary injunction and enjoined BBBB from enforcing any bail bond premium financing agreements with any cosigner who was not first provided with the requisite notice. (*Ibid*.) The Court of Appeal concluded that the premium financing agreement at issue was subject to section 1799.91. (*Caldwell,* at pp. 367–368.) The Court of Appeal upheld the trial court's finding that the cross-complainant and other similarly situated cosigners were entitled to statutory notice. (*Id.* at pp. 369–371.) It affirmed the trial court's preliminary injunction, and our Supreme Court denied BBBB's petition for review.

In September 2022, in this case, appellants filed a third motion to set aside summary judgment, vacate bail forfeiture, and exonerate the bond. Citing *Caldwell*, the motion claimed that appellants "are enjoined from collecting the premium from Riste." It further argued the premium was part of the consideration that appellants received in return for posting the bail bond, and therefore the bail bond is void. Appellants thus

---

[4] All further undesignated statutory references are to the Civil Code.

4

contended that the trial court lacked jurisdiction to enter summary judgment, and that the judgment is void.

The trial court denied the motion in a minute order. Appellants timely appealed.

## DISCUSSION

Appellants argue that they were enjoined from collecting any premium from Riste under the preliminary injunction in *Caldwell*.[5]  They claim that this premium was part of the consideration they bargained for in agreeing to post bail, and therefore the bail bond is void.  In turn, they argue that the trial court lacked jurisdiction over the void bail bond, and that the summary judgment is void on its face.  We conclude that the bail bond is not void, and therefore the trial court did not err in denying appellants' motion.

## I.    Applicable Law and Standard of Review

When a bail bond is void, the trial court lacks jurisdiction over the bond, and any summary judgment on the forfeiture of the bond is void.  (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 595 (*International Fidelity*).)

---

[5]    "[A] preliminary injunction is not a determination on the merits—unless the question before the trial court is one of law alone that can be resolved without resort to extrinsic or additional evidence."  (*Yee v. American National Ins. Co.* (2015) 235 Cal.App.4th 453, 457–458.)  Although the *Caldwell* injunction is preliminary, appellants may rely on the legal conclusion that the agreement at issue in that case is a consumer credit contract subject to the notice requirements in section 1799.91, and is thus unenforceable under section 1799.95 against any cosigner who did not receive proper notice.  (*Caldwell, supra*, 73 Cal.App.5th at pp. 362, 367–368.)  The parties agree that the Bail Agent's premium agreements are unenforceable under *Caldwell*.

5

The trial court has discretion to set aside a void judgment. (Code Civ. Proc., § 473, subd. (d).) However, "[o]nce six months have elapsed since the entry of a judgment, 'a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face,' " i.e., " ' "when the invalidity is apparent upon an inspection of the judgment-roll." ' "[6] (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 496.) The People argue appellants' motion was untimely because it was filed nearly seven years after the entry of judgment and is based on extrinsic evidence. However, "if a party admits facts showing that a judgment is void, or allows such facts to be established without opposition, then, as a question of law, a court must treat the judgment as void upon its face," and the judgment may be challenged at any time. (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1327–1328.) The People did not oppose the extrinsic evidence appellants submitted in support of their motion. If that evidence establishes the judgment is void, we must treat it as void on its face, and, as such, it would be subject to challenge at any time. (*Ibid.*) We therefore reject the People's argument that the motion was untimely, and we address the merits of appellants' argument that the judgment was void.

"Voidness is a legal question we review de novo; the discretionary decision whether to set aside a void judgment or order is, as one would anticipate, reviewed solely for an abuse of that discretion." (*People v. The North River Ins. Co.* (2020) 48

---

[6] The judgment roll includes those documents, such as the summons, pleadings, proof of service, findings or verdict, and judgment, filed when the clerk enters judgment. (Code Civ. Proc., § 670.)

6

Cal.App.5th 226, 232 (*North River*).)  However, where, as here, "the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review" of an order denying a motion to set aside summary judgment on a bail bond as void.  (*International Fidelity*, *supra*, 204 Cal.App.4th at p. 592.)

## II.  Appellants Have Not Established That the Bail Bond is Void Due to Unlawful Consideration

"Bail is a function of 'two different contracts between three different parties . . . .' "  (*North River*, *supra*, 48 Cal.App.5th at p. 235.)  The first is "a contract between a criminal defendant and a surety under which the surety posts a bail bond in exchange for the defendant's payment of a premium and his promise to pay the full amount of the bond in the event of his nonappearance . . . ." (*Ibid*.)  This contract may be entered by the defendant or a cosigner, such as a friend or family member; and the surety is represented by a bail agent.  "The bail agent charges the [defendant or the cosigner] the bail premium, which is normally set at 10 percent of the cash bail amount."  (*Caldwell*, *supra*, 73 Cal.App.5th at p. 363.)

The second contract is between the state and the surety. " 'In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place . . . .  If the defendant fails to appear . . . the surety becomes the absolute debtor of the state for the amount of the bond.' "  (*People v. Amwest Surety Ins. Co.* (1991) 229 Cal.App.3d 351, 356 (*Amwest*).)

This appeal implicates a third contract, which is "ancillary to the bail bond transaction"—the bail bond premium financing

7

agreement. (*Caldwell, supra*, 73 Cal.App.5th at p. 368.) This agreement is "between an arrestee (or cosigner) and the bail bond agent to finance the payment of the premium." (*Id*. at p. 363.) It "extends credit to cosigners who are unable to afford the bail bond premium by accepting an initial downpayment and allowing them to pay the balance of the premium in monthly installments." (*Id*. at p. 368.)

Appellants argue that the bail bond, i.e., the second contract described above, is void because it included unlawful consideration. We disagree. As in a typical bail bond agreement, the Surety undertook to ensure that Peterson would appear at future court appearances, and it agreed to pay the state $100,000 if he failed to appear. In consideration for these commitments, the state released Peterson from custody. (*Amwest, supra*, 229 Cal.App.3d at p. 356; *People v. Deletorre* (1932) 124 Cal.App. 559, 562 ["The consideration for a bail bond, as between the People and the surety thereon, is the release of the defendant charged with crime"].) No aspect of this contract has been determined to be unlawful.

Appellants' reliance on *International Fidelity, supra*, 204 Cal.App.4th 588 in support of their argument to the contrary is misplaced. In *International Fidelity*, a defendant was released on a $35,000 bail bond. (*Id*. at p. 590.) The court later discovered that the defendant had outstanding warrants, remanded him into custody, and increased his bail to $100,000 while keeping the $35,000 bond in place. (*Ibid*.) The defendant procured a $65,000 bail bond through International Fidelity. (*Id*. at p. 591.) When the defendant failed to appear at a subsequent hearing, the court ordered both bonds forfeited. (*Ibid*.) The trial court denied

International Fidelity's motion to vacate the forfeiture and to exonerate the bond.  (*Ibid*.)

On appeal, the court reasoned that the $100,000 bail order "contained two items of consideration in exchange for the posting of the $65,000 bond.  The first was the release of [the defendant] from the sheriff's custody and the second was the extension of the original $35,000 bail bond in place." (*International Fidelity*, *supra*, 204 Cal.App.4th at p. 595.)  However, the $35,000 bond had been "exonerated by operation of law" when the defendant was remanded into custody, meaning the court's extension of that bond was unlawful.  (*Id*. at p. 594.)  The court recognized that section 1608 "provides that, if any part of several considerations for a single object is unlawful, 'the entire contract is void.' " (*Id*. at p. 595.)  Because the extension of the $35,000 bail bond was illegal, the court concluded that "the contract between the state and International Fidelity concerning the $65,000 bond was void." (*Ibid*.)  It further held that the summary judgment entered on the bond was likewise void and subject to attack at any time. (*Id*. at pp. 595–596.)

In contrast to *International Fidelity*, the bail bond in this case did not include any unlawful consideration.  Appellants, however, appear to contend that the Premium Agreement, which *Caldwell* declared unenforceable, was part of the consideration owed under the bail bond agreement.[7]  But the Premium Agreement is "ancillary" to the bail bond transaction.  (*Caldwell*,

---

[7]     Appellants fail to explain whether Riste is part of the *Caldwell* class, or whether the Premium Agreement in this case is identical or even substantially similar to those in *Caldwell*. However, the People do not dispute that the Bail Agent's premium agreements are unenforceable under *Caldwell*.

*supra*, 73 Cal.App.5th at p. 368.) To conclude that the bail bond is void because the Premium Agreement was later declared unenforceable goes far beyond the ruling in *International Fidelity*, which "simply holds that when there is a failure of some of the consideration that the surety understood to have been given *by the government* for the bail agreement, the agreement is void." (*People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1226, italics added.) As we have discussed, the only consideration given by the government was Peterson's release. The Premium Agreement was not part of the consideration for the bail bond agreement.

Appellants also argue that the Bail Agent relied on Riste's agreement to pay the premium when it posted the bond on the Surety's behalf. Yet, this argument simply describes the terms of the Premium Agreement and the Indemnity Agreement (collectively, the "premium financing agreements"). Through the Indemnity Agreement, Riste agreed to pay the Bail Agent a premium "in consideration of" the Bail Agent coordinating with the Surety to execute the bond. The Premium Agreement required Riste to pay the premium to the Bail Agent in installments. Appellants fail to explain how the consideration owed by Riste to the Bail Agent under these agreements could simultaneously serve as consideration for the bail bond agreement between the Surety and the state. Indeed, the Surety was not even a party to the premium financing agreements, which were "strictly between" the Bail Agent and Riste, nor was Riste a party to the bail bond agreement between the Surety and the state. Appellants also fail to explain how the Surety, in agreeing to post the bail bond, could have relied on consideration

that Riste owed to the Bail Agent, which is a separate entity from the Surety.[8]

Finally, appellants claim the state knew that appellants relied on the premium when they agreed to post the bond, pointing to a space in the bail bond used to indicate the premium charged per annum.  However, that space was left blank in this case, indicating the state may not have known that any premium was owed.  And even if the state was aware of the premium, appellants have not articulated how such knowledge establishes that the premium was part of the consideration for the bail bond agreement.[9]

---

[8]     Appellants assert that consideration for the bail bond agreement could have come from a third party to that agreement, such as Riste, citing two cases for the proposition that consideration "need not move from the promisee."  (*Flores v. Woodspecialties, Inc.* (1956) 138 Cal.App.2d 763, 768; *First Nat. Bank v. Pomona Tile Mfg. Co.* (1947) 82 Cal.App.2d 592, 603 ["consideration does not have to move . . . from the promisee"].)  However, neither case involved a bail bond, and appellants fail to apply the reasoning of either opinion to the facts of this case.

Appellants also argue the premium was part of the consideration for the bail bond because "the benefits of the [bail bond] transaction [include the] premium charged for the bond," quoting *People v. Ranger Ins. Co.* (1994) 31 Cal.App.4th 13, 21.  However, this quotation merely describes one party's contentions, and the court did not make any finding or reach any legal conclusion on the issue.  (*Id.* at p. 23.)

[9]     Appellants also argue that the bond is void based on a "conflict between Insurance Regulations, Section 2083, and Civil Code Section 1799.91[ ] et seq. . . ."  This appears to be an attempt to relitigate the issues in *Caldwell*, in which BBBB

11

The bail bond is not void.  The trial court therefore had jurisdiction over the bail bond when it ordered the bond forfeited and when it entered summary judgment.  The court properly denied appellants' motion to set aside summary judgment, vacate the forfeiture, and exonerate the bond.

---

argued that this conflict meant the bail bond industry was not subject to section 1799.91 et seq.  Appellants have not explained how this alleged conflict affects the validity of the bond or the summary judgment in this case, nor are we inclined to relitigate the issues in *Caldwell*.

**DISPOSITION**

The September 16, 2022, order denying appellants' motion to set aside the October 1, 2015, summary judgment, vacate the forfeiture, and exonerate the bond, is affirmed. Respondent is awarded its appellate costs.

**CERTIFIED FOR PUBLICATION**


BERSHON, J.*


We concur:



EDMON, P. J.



EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13