Filed 1/30/25  P. v. International Fidelity Ins. Co. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY,<br><br>    Defendant and Appellant. | C100067<br><br>(Super. Ct. No. 62182026B) |

International Fidelity Insurance Company (Surety) appeals after the trial court directed it to pay $50,000 on a bail bond.  Surety argues it need not pay this amount because the bail bond is void.  It further contends it has been exonerated of its obligations under the bail bond because the trial court materially increased the risk that the bond would be forfeited.  It lastly argues the trial court entered judgment on the bond one day too early.  We affirm, finding none of Surety's arguments persuasive.

1

BACKGROUND

A bail bond is a contract between the surety and the state. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).) " ' "In general the state and surety agree that if the state will release the defendant from custody, the surety will undertake that the defendant will appear personally and at a specified time and place. . . . If the defendant fails to appear at the proper time and place, the surety becomes the absolute debtor of the state for the amount of the bond." ' " (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 714-715, italics omitted.)

In this case, Surety posted a bail bond in the amount of $50,000 for a defendant charged with possessing an illegal assault weapon, among other crimes. Surety did so after the trial court set bail at $50,000 and, as conditions of release, required "supervision to be established prior to release" and "GPS." The bail bond provides, among other things, that Surety undertakes that the defendant will hold himself "amenable to the orders and process of the court," and that if the defendant fails to do so, Surety will pay $50,000 to the People of the State of California.

The defendant was released from custody shortly after Surety posted the bond. A day after his release, the county probation department put a GPS device on him. He afterward appeared in court for several early status conferences. At the last one, the court scheduled another early status conference and ordered the defendant to be personally present.

A month before the scheduled early status conference, the county probation department told the court that it received a tamper alert for the defendant's GPS device, possibly because he had cut if off, and that it tried to contact the defendant without success. It asked the court to issue a bench warrant for the defendant's arrest. The court issued the requested bench warrant. It later declared the bail bond forfeited at the scheduled early status conference. The court clerk then mailed notice to Surety that the bond was ordered forfeited because the defendant failed to appear. (See Pen. Code,

2

§ 1305, subd. (a)(1)(D) [a court must declare a bail bond forfeited if a defendant, without sufficient excuse, fails to appear when lawfully required].)

Several months later, Surety moved to vacate forfeiture and exonerate bail. It argued, among other things, that it had no need to pay the bail amount because the county probation department put the GPS device on the defendant after his release from custody, rather than before. The court denied the motion, said its bench warrant remained outstanding, and entered summary judgment on the bond. Surety subsequently appealed.

DISCUSSION

I

*Is the Bail Bond Void?*

We start with Surety's argument that the bail bond is void. Breaking down its argument into three parts, it first asserts that the bail bond's terms include not only those described in the bail bond itself; they also include any terms in the trial court's order setting bail. It then argues that one of the terms in the written bail order required the defendant to be fitted with a GPS device before his release from custody. Finally, it contends the trial court failed to impose this term before the defendant's release, making the bail bond void for unlawful consideration. It acknowledges, though, that the defendant was fitted with a GPS device shortly after his release from custody.

We reject Surety's argument. As the People note, nothing in the written bail order required the defendant to be fitted with a GPS device before his release. It simply required "GPS," without specifying when a GPS device should be in place. The order also said in a separate sentence that "supervision [was] to be established prior to release." But it never said that GPS too must "be established prior to release."[1] At any rate, even

---

[1] Surety's argument on this issue has shifted over time. In its opening brief, it argued that its position followed from the trial court's written bail order. But with its reply brief, it moved to augment the record to include the oral transcript for the bail order. It then, in

3

had the order required GPS before release, that would do nothing for Surety.  Surety claims that the trial court failed to impose the GPS requirement before the defendant's release, rendering the bail bond void for "unlawful consideration" under Civil Code section 1608 and *People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588.  But Surety never identifies any unlawful consideration here.  All it alleges is that the trial court imposed the GPS requirement a little late, with defendant being fitted with GPS the day after his release rather than before his release.  But this alleged one-day delay in performance does not show that the bail bond included unlawful consideration.  Nor does it show a material breach of the bail bond.  (*Bisno v. Sax* (1959) 175 Cal.App.2d 714, 722 ["valuable contractual rights should not be surrendered or forfeitures suffered by a slight delay in performance unless such intention clearly appears from the contract or where specific enforcement will work injustice after a delayed tender"]; see 23 Williston on Contracts (4th ed. 2024) § 63:18 ["not every delay constitutes a material breach of contract"].)

II

*Did the Trial Court Materially Increase the Risk of Forfeiture?*

We turn next to Surety's contention that the trial court's conduct materially increased the risk of forfeiture, making the bail bond unenforceable.

Surety bases its argument largely on Civil Code section 2819.  That statute provides, as relevant to Surety's argument:  "A surety is exonerated . . . if by any act of the creditor, without the consent of the surety the original obligation of the principal is

_____

its reply brief, argued that this transcript favored its position.  We decline, however, to consider Surety's belated reliance on the oral transcript, which was not even part of the record when the People filed their briefing.  (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 510 [declining to consider documents "provided for the first time in the reply brief"]; see also *People v. Alexander* (2010) 49 Cal.4th 846, 922 [a defendant's arguments raised for the first time in a reply brief are forfeited].)

altered in any respect"—which courts have construed to mean altered in any material respect. (*Los Angeles Unified School Dist. v. Torres Construction Corp.*, *supra*, 57 Cal.App.5th at p. 513.) Surety also cites state and federal case law on bail bonds saying something similar when the state changes, or interferes with, a surety's or defendant's obligations. These cases state: A surety is exonerated if the state, without the surety's consent or knowledge, "materially increases the surety's risks." (*People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322-325; see *United States v. King* (7th Cir. 2003) 349 F.3d 964, 967 ["When they do not get notice, and the underlying agreement is materially altered to the sureties' detriment, then the sureties' obligation is discharged"].)

Citing both Civil Code section 2819 and this case law, Surety contends it has been exonerated of its obligations for two reasons. First, it argues it has been exonerated because the trial court, in violation of the written bail order, released the defendant without GPS monitoring. But as covered already, Surety misinterprets the bail order. The written bail order simply required "GPS," period, without specifying when. Consistent with this requirement, the county probation department put a GPS device on the defendant the day after his release. Second, Surety argues it has been exonerated because the trial court failed to provide notice when the defendant removed the GPS device. But while true the trial court never provided this notice, none of Surety's cited authorities required this notice. These authorities, again, apply when the state changes, or interferes with, a surety's or defendant's obligations. One example of authority is *People v. Western Ins. Co.*, *supra*, 213 Cal.App.4th 316, which Surety repeatedly cites. The trial court there authorized a defendant to leave the country and consequently interfered with the defendant's implied covenant with the surety not to leave the country. The appellate court found this interference materially increased the surety's risk, warranting exoneration of the bail bond. (*Id.* at pp. 322-325.) But here, the state has neither changed nor interfered with anyone's obligations, so we cannot say that it took any action of this sort that materially increased Surety's risk.

Surety offers one more argument on this topic in its reply brief. It suggests that the trial court violated some " 'strict statutory direction " when it failed to disclose that the defendant removed the GPS device. It then characterizes as "similar" a case holding that a statute requiring trial courts to declare a bail bond forfeited in certain circumstances, implicitly requires trial courts to act in a timely fashion. (*People v. United Bonding Ins. Co.* (1971) 5 Cal.3d 898, 906.) But apart from raising this argument too late (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [new arguments in a reply brief are forfeited]), Surety never reveals the statute it believes advances its claim here. Nor does it acknowledge case law finding no general duty to disclose facts to a surety. (*Sumitomo Bank of California v. Iwasaki* (1968) 70 Cal.2d 81, 85 ["No general duty imposes upon the creditor the obligation to disclose to the surety such matters as the creditor knows might affect the surety's risk"]; see also Rest., Security, § 124, com. ["There is no general rule of suretyship that the creditor must keep the surety informed of natural facts affecting the surety's risk when they do not give the surety the power to terminate his liability"].) "In the absence of a showing of a duty to disclose," we must reject Surety's argument. (*People v. Accredited Surety & Casualty Co., Inc.* (2004) 125 Cal.App.4th 1, 11.)

III

*Did the Trial Court Prematurely Enter Summary Judgment?*

Lastly, we address Surety's claim that the trial court prematurely entered summary judgment on the bond.

A trial court cannot enter summary judgment on a bond until at least two things occur. First, the bond must have been forfeited. (Pen. Code, § 1306, subd. (a).) Second, a certain amount of time must have elapsed without the forfeiture being set aside—a grace period of sorts "known as the appearance period." (*Ibid.*; *American Contractors*, *supra*, 33 Cal.4th at p. 658.) This period is generally 185 days from the date the court clerk mails the notice of forfeiture to the surety (Pen. Code, § 1305, subds. (b)(1), (c)(1)),

6

though it can be extended for good cause (*id.*, § 1305.4). The defendant's appearance in court during this period will require the court to set aside the forfeiture, as will certain other circumstances. (*Id.*, § 1305, subds. (c), (d).)

The date the appearance period expires without the forfeiture being set aside is typically "the date upon which [the judgment] may first be entered" against the surety. (Pen. Code, § 1306, subds. (a), (c).) But sometimes this date is a little later. When a motion for relief is pending—say, as here, a motion to vacate forfeiture and exonerate bail—the court cannot enter judgment until after it rules on the motion. (*People v. United States Fire Ins. Co.* (2015) 242 Cal.App.4th 991, 1003.) In that case, the date the judgment may first be entered is " 'when the motion is denied.' " (*People v. Bankers Ins. Co.* (2021) 65 Cal.App.5th 350, 357.) That date then triggers a 90-day clock for the trial court to enter summary judgment. (Pen. Code, § 1306, subd. (c).) A judgment entered outside this period—whether too early or too late—is voidable. (*American Contractors*, *supra*, 33 Cal.4th at p. 657.)

In this case, Surety argues that the trial court prematurely entered judgment before this 90-day period started. It notes that the appearance period expired on September 7, 2023, that it filed a motion to vacate forfeiture and exonerate bail the day before, and that on November 9, 2023, the court denied the motion and entered summary judgment. It then asserts that the court entered judgment too soon. It reasons that the court needed to wait one day after denying the motion before entering judgment, citing in support a case stating: "[W]here a surety timely files a motion to vacate forfeiture prior to the expiration of the [appearance] period, and the motion is decided after expiration of that period . . . , the court's power to enter summary judgment begins on the day following denial of the motion and expires 90 days later." (*People v. Granite State Insurance Co.* (2003) 114 Cal.App.4th 758, 770; see also *People v. United States Fire Ins. Co.*, *supra*, 242 Cal.App.4th at p. 1010 [stating the same].)

7

We reject Surety's argument.  We agree the quoted language appears to advance Surety's position.  It says that "the court's power to enter summary judgment begins on the day following denial of the motion" (*People v. Granite State Insurance Co.*, *supra*, 114 Cal.App.4th at p. 770); and here, the trial court entered summary judgment the same day it denied the motion, not the day following the denial.  But as another court recently explained, "*Granite State* did not turn on whether the court's jurisdiction to enter summary judgment began immediately after the denial of the surety's motion or on the next calendar day." (*People v. Basica* (2024) 101 Cal.App.5th 575, 580.)  And its "dictum that 'the court's power to enter summary judgment begins on the day following denial of the motion' " is nothing more than "a general reference to how the 90-day period of [Penal Code] section 1306, subdivision (c), is calculated," with the day following denial of the motion serving as the first day of the 90-day period.  (*Basica*, at pp. 580-581.)

Surety, misunderstanding *Basica*, appears to believe that this case endorsed *Granite State*'s dictum, citing *Basica*'s language saying that "the day after the denial of the motion to vacate forfeiture is the first day of the 90-day period after which summary judgment cannot be entered." (*People v. Basica*, *supra*, 101 Cal.App.5th at p. 581.)  But the first day in calculating this 90-day period, and the first day for the trial court to act, are two different things.  The trial court can act " '*when the motion is denied*,' " as *Basica* explains.  (*Id.* at p. 580.)  But the first day of the 90-day period is the day after.  That is because for calculating purposes, the day the motion is denied is day zero, the day after is day one, and so on until day 90.  (Cal. Rules of Court, rule 1.10(a) ["The time in which any act provided by these rules is to be performed is computed by excluding the first day . . ."].)  In our reading, *Granite State* meant only to reference this method of calculating the 90-day period.  And although the court phrased this issue differently in the language quoted above, taking its dictum literally makes no sense.  It makes sense for a trial court to deny a pending motion for relief before entering judgment on a bond.  But it

8

makes no sense to require the trial court to wait a day after denying the motion before entering judgment.  We, like the court in *Basica*, reject Surety's reliance on *Granite State*'s dictum.

## DISPOSITION

The summary judgment on the bond and the order denying the motion to vacate forfeiture and exonerate bail are affirmed.  The People are entitled to recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


                                                                /s/
                                         BOULWARE EURIE, J.

We concur:


   /s/
DUARTE, Acting P. J.


   /s/
FEINBERG, J.

9